NO. COA 13-1310

NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

DEBORAH MILLER,
    Employee,
    Plaintiff,

v.                                    From the Industrial Commission
                                      No. I.C. W29159
MISSION HOSPITAL, INC.,
    Employer,

SELF-INSURED,
    Defendant.

Appeal by Plaintiff from Opinion and Award entered 6 August 2013 by the North Carolina Industrial Commission. Heard in the Court of Appeals 8 April 2014.

*Root & Root, PLLC, by Louise Critz Root, for plaintiff-appellant.*

*Brewer Defense Group, by Joy H. Brewer and Ginny P. Lanier, for defendant-appellee.*

STEELMAN, Judge.

Where the Industrial Commission held that defendant had rebutted the presumption that arose by virtue of the filing of a Form 60 and pursuant to *Parsons v. Pantry, Inc.*, 126 N.C. App. 540, 485 S.E.2d 867 (1997), the burden shifted back to plaintiff to establish her continuing need for medical treatment. Where plaintiff failed to meet this burden and failed to present

evidence of disability, the Commission properly ordered indemnity and medical compensation to plaintiff terminated.

## I. Factual and Procedural Background

Deborah Miller (plaintiff) was born in 1952 and began working for Mission Hospital (defendant) around 1988. In 2003 plaintiff was diagnosed with non-work related cervical spondylosis, a degenerative spinal condition. She underwent cervical fusion surgery at C3-C4 and returned to work in early 2004. On 10 June 2009 plaintiff suffered a compensable injury by accident that aggravated her pre-existing back condition. She was referred to Dr. Stephen David, who treated her from 12 June 2009 until early 2012. Plaintiff had an MRI scan on 14 June 2009. Dr. David reviewed the results and observed a "disc protrusion at C2-C3" that had not been present in an MRI performed in January 2003. Dr. David believed that the C2-3 disc herniation was a contributing cause of her symptoms, in addition to the exacerbation of her chronic spinal condition.

On 2 July 2009 defendant filed an Industrial Commission Form 60 admitting the compensability of plaintiff's claim for workers' compensation benefits and describing her injury as a C2-3 disc herniation. Tests performed at the direction of Dr. David revealed that the C2-3 disc herniation was not impinging upon plaintiff's spinal nerves. However, plaintiff reported

significant pain and difficulty in performing daily activities to Dr. David, who treated her with cervical epidural injections, physical therapy, heat and ice on the affected areas, and various medications.

On 2 February 2010 plaintiff had a functional capacity evaluation, and on 12 February 2010 Dr. David examined plaintiff and reviewed the results of the evaluation. He concluded that plaintiff had reached maximum medical improvement and could return to work full time, with restrictions. However, a few weeks later, plaintiff reported to Dr. David that her symptoms had gotten worse. Dr. David found plaintiff "difficult to treat" because, despite the variety of treatments she did not have "any significant break-throughs," and his notes from 16 June 2010 state that he found it necessary to "write her out of work permanently."

Defendant hired a private investigator, who made videos in March 2010 depicting plaintiff engaging in daily activities over a number of days. On 19 April 2011 plaintiff was examined by Dr. Dennis White, a specialist in pain medicine. He initially diagnosed plaintiff with 'peripheralized' pain in "a global, nonspecific pain pattern." However, when Dr. White viewed the video surveillance of plaintiff, he found her movements as shown

on the surveillance video to be inconsistent with her behavior and with the symptoms she reported during his examination.

Dr. Craig Brigham, an orthopedic surgeon who specializes in spine surgery, examined plaintiff on 27 January 2011 and found her to have a "near full range of motion of her cervical spine" as well as a "normal range of motion of the shoulders." Dr. Brigham saw no objective reason that plaintiff could not return to full duty work without restriction, and opined that the consequences of her work injury had resolved and that no further treatment was needed. Dr. Dahari Brooks, an orthopedic specialist, reviewed plaintiff's medical records, Dr. Brigham's notes and the surveillance videos. Based upon his review of these records, Dr. Brooks agreed with Dr. Brigham's assessment. He observed that the videos showed plaintiff engaging in activities that were inconsistent with the subjective complaints noted in her medical records, and that her physical motions in the surveillance vidoes did not correlate with the restricted motion she described during her office visits. He testified that Plaintiff was capable of returning to full duty work without restriction and did not need further medical treatment.

On 23 August 2011 plaintiff filed an Industrial Commission Form 33 requesting that her claim be assigned for hearing. The Full Commission issued its Opinion and Award on 6 August 2013.

The Commission concluded that plaintiff had "regained the capacity to earn the same wages she was earning at the time of the injury in the same employment, and therefore, she is not disabled" and that "there is no need for ongoing medical treatment in this case related to Plaintiff's injury by accident on June 10, 2009." The Commission ordered defendant to "stop payment of indemnity and medical compensation to Plaintiff."

Plaintiff appeals.

## II. Standard of Review

> The standard of review in workers' compensation cases has been firmly established by the General Assembly and by numerous decisions of this Court. . . . Under the Workers' Compensation Act, '[t]he Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony.' Therefore, on appeal from an award of the Industrial Commission, review is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law. This 'court's duty goes no further than to determine whether the record contains any evidence tending to support the finding.' "[F]indings of fact which are left unchallenged by the parties on appeal are 'presumed to be supported by competent evidence' and are, thus 'conclusively established on appeal.'" The "Commission's conclusions of law are reviewed *de novo*."

*Spivey v. Wright's Roofing*, __ N.C. App. __, __, 737 S.E.2d 745, 748-49 (2013) (quotations and citations omitted).

### III. Commission's Description of Plaintiff's Injury

In her first argument, plaintiff contends that the Commission erred in Conclusion of Law No. 1 by holding "that plaintiff had sustained an aggravation of a pre-existing condition" without holding that she had also suffered a disc herniation. Plaintiff does not dispute that she had a pre-existing spinal condition or challenge the evidentiary support for the Commission's finding that her compensable injury included an exacerbation of this pre-existing condition. Instead, she contends that it was error for the Commission not to specify that she also suffered a disc herniation. Plaintiff appears to argue that (1) defendant attempted "to void the agreement" represented by the execution of an Industrial Commission Form 60 by denying that she had a disc herniation as stated on the Form 60, and that (2) whether or not she suffered a disc herniation was a disputed issue of legal significance which the Commission was required to resolve. We disagree with both assertions.

Plaintiff does not identify any evidentiary basis for her assertion that defendant attempted to have the Form 60 set aside. For example, she does not contend that defendant filed a motion to have the Form 60 set aside, or that defendant ever denied that plaintiff suffered a compensable injury as admitted

by the Form 60. The forms filed by the parties make it clear that they agreed that plaintiff had suffered a compensable injury in 2009, but disagreed about whether or not she remained disabled or needed further medical treatment several years later. In the Industrial Commission Form 33 that plaintiff filed to request a hearing, she asserted that "Plaintiff maintains and defendants deny that plaintiff is permanently and totally disabled." In the Form 33R that defendant filed in response, defendant asserted that "Plaintiff has failed to present sufficient evidence to establish that she remains disabled as a result of her compensable injury or that she is permanently and totally disabled." Thus, both parties characterized their dispute as a disagreement about the duration of plaintiff's disability, and not as a conflict about the nature of her original injury or the validity of the Form 60.

Plaintiff also fails to articulate why the Commission was required to make more detailed findings about her original injury in its determination of whether she was entitled to continued disability or medical compensation at the time of the hearing. Moreover, in its Conclusion of Law No. 3 the Commission specifically addressed the legal implications of the fact that the Form 60 characterizes plaintiff's injury as a disc herniation. Plaintiff fails to explain how she was prejudiced by

the Commission's failure to specify that she had a C2-3 disc herniation in its Conclusion No. 1, given that this issue is expressly addressed in another conclusion of law.

We hold that there is no evidence that defendant attempted to "void" the Form 60, and that plaintiff was not prejudiced by the Commission's characterization of her admittedly compensable injury as an aggravation of her pre-existing condition rather than an aggravation of her condition and also a separate disc herniation.

This argument is without merit.

## IV. Cessation of Medical Compensation

In her next argument, plaintiff asserts that the Commission's conclusion that she did not need further medical compensation was "not supported by the evidence of record or applicable law." We disagree.

Medical compensation is defined as "medical, surgical, hospital, nursing, and rehabilitative services" that "may reasonably be required to effect a cure or give relief" or "tend to lessen the period of disability[.]" N.C. Gen. Stat. § 97-2(19). "In a workers' compensation claim, the employee 'has the [initial] burden of proving that his claim is compensable.'" *Holley v. Acts, Inc.*, 357 N.C. 228, 231, 581 S.E.2d 750, 752 (2003) (quoting *Henry v. Leather Co.*, 231 N.C. 477, 479, 57

S.E.2d 760, 761 (1950)). "The degree of proof required of a party plaintiff under the Act is the 'greater weight' of the evidence or 'preponderance' of the evidence." *Phillips v. U.S. Air, Inc.*, 120 N.C. App. 538, 541-42, 463 S.E.2d 259, 261 (1995). "The employer's filing of a Form 60 is an admission of compensability." *Perez v. Am. Airlines/AMR Corp.*, 174 N.C. App. 128, 135, 620 S.E.2d 288, 293 (2005) (citing *Sims v. Charmes/Arby's Roast Beef*, 142 N.C. App. 154, 159, 542 S.E.2d 277, 281 (2001)). "Where a plaintiff's injury has been proven to be compensable, there is a presumption that the additional medical treatment is directly related to the compensable injury. The employer may rebut the presumption with evidence that the medical treatment is not directly related to the compensable injury." *Perez*, 174 N.C. App. at 135, 620 S.E.2d at 292 (citing *Reinninger v. Prestige Fabricators, Inc.*, 136 N.C. App. 255, 259, 523 S.E.2d 720, 723 (1999), and *Parsons v. Pantry, Inc.*, 126 N.C. App. 540, 542, 485 S.E.2d 867, 869 (1997). If the defendant rebuts the *Parsons* presumption, the burden of proof shifts back to the plaintiff. *See McCoy v. Oxford Janitorial Service Co.*, 122 N.C. App. 730, 733, 471 S.E.2d 662, 664 (1996) ("[T]he signing of the Form 21 agreement established a presumption of the plaintiff's disability. The defendant then presented evidence . . . successfully rebutting plaintiff's

presumption of disability, and the burden shifted back to the plaintiff.").

As discussed above, defendant admitted the compensability of plaintiff's injury by filing a Form 60 on 22 June 2009. Therefore, the issue before the Commission was <u>not</u> whether plaintiff had suffered a compensable workplace accident in 2009, or whether she experienced a C2-3 disc herniation, but whether at the time of the hearing she required any further medical treatment for her injury. In this regard, the Commission found in relevant part that:

. . .

> 3. On June 10, 2009, Plaintiff sustained an injury by accident arising out of and in the course of her employment with Defendant[.]

. . .

> 6. Plaintiff was referred to Dr. Stephen Michael David . . . and began treating with him on June 12, 2009. Plaintiff received conservative treatment from Dr. David from mid-2009 through early 2012[.] . . .

> 7. Dr. David recommended a cervical MRI, which was done on June 14, 2009. . . . In the opinion of Dr. David, the June 2009 cervical MRI revealed the prior surgical fusion at C3-C4, cervical spondylosis with broad-based disc osteophyte formation at C5-C6, as well as a new central disk protrusion at C2-3. . . .

. . .

9. Nerve conduction studies were done on January 12, 2010, . . . [which showed] no evidence of cervical entrapment. . . .

. . .

11. . . . [O]n February 12, 2010 . . . Dr. David assessed Plaintiff at maximum medical improvement . . . [and] released her to return to work with restrictions[.] . . .

12. Shortly after being released to return to work with restrictions, Plaintiff returned to Dr. David on March 2, 2010, reporting an aggravation of her neck pain. . . .

. . .

14. Defendant engaged a private investigator to conduct surveillance on Plaintiff. . . .

15. . . . [The video surveillance] shows Plaintiff engaging in many of the activities of daily living. Her movements have been noted to be inconsistent with what was expected by the physicians, based upon her presentations in their offices. The video shows more fluid and natural movement than Plaintiff demonstrated in the offices of the physicians or at the hearing before Deputy Commissioner Ledford.

. . .

21. . . . Plaintiff was examined on April 19, 2011 by Dr. Dennis White, a specialist in pain medicine. Upon examination, Dr. White noted that Plaintiff appeared to be in distress, guarding her neck movements and avoiding any flexion of the neck or gestural range of motion while communicating. According to Dr. White, Plaintiff was deliberately avoiding any movement because of pain. . . .

. . .

23. . . . Dr. White viewed the video of the surveillance of Plaintiff. He found her movements on the surveillance [video] to be inconsistent with what she demonstrated at the time of the examination[, and testified that] . . . . Plaintiff's movement on the surveillance video was natural, spontaneous, gestural, and rhythmic, and that he "didn't see any sign of distress whatsoever." . . .

24. Dr. Craig Brigham, an orthopedic surgeon who specializes in spine surgery, examined Plaintiff on January 27, 2011[.] . . . Dr. Brigham found no neurological abnormalities and no motor deficits. Dr. Brigham found "near full range of motion of her cervical spine considering she has had a 1-level fusion as well as normal range of motion of the shoulders." . . .

25. Dr. Brigham testified that he saw no acute distress when he examined Plaintiff and . . . no objective basis as to why Plaintiff could not return to full duty work without restriction[,] . . . based upon his review of the medical records and what he found to be a lack of objective evidence of ongoing problems, as well as the inconsistencies noted in his physical examination of Plaintiff. He opined that any consequences of the work injury had resolved and no further treatment was needed.

26. Dr. Dahari Brooks, an orthopaedic specialist, conducted a medical records review . . . [and] agreed with the assessment of Dr. Brigham. In his opinion, the surveillance footage he reviewed showed Plaintiff engaging in activities which were inconsistent with her subjective pain complaints[.] . . . Plaintiff's physical motions as seen in the surveillance footage failed to correlate with the restricted motion she described during the course of

her office visits. . . . Dr. Brooks opined that Plaintiff was capable of returning to full duty work without restriction and that she would not need further medical treatment.

. . .

33. Based upon a preponderance of the evidence in view of the entire record, the Full Commission does not find Plaintiff's testimony regarding the nature and severity of her complaints to be credible.

34. In assessing the expert medical testimony, the Full Commission places greater weight on the testimony of Dr. Brooks, Dr. White, and Dr. Brigham, as opposed to that of Dr. David[.] . . . There is no objective basis for Plaintiff's complaints of ongoing, disabling . . . pain, and these complaints are belied by the video surveillance evidence. . . . Dr. David's opinions are based in large part on Plaintiff's subjective complaints, which the Full Commission does not find credible.

Plaintiff has not challenged the evidentiary support for these findings of fact, which are therefore binding on appeal. *Johnson v. Herbie's Place*, 157 N.C. App. 168, 180, 579 S.E.2d 110, 118 (2003). We hold that these findings support the Commission's conclusion that "any consequences of Plaintiff's work-related injury have resolved and that there is no need for ongoing medical treatment in this case related to Plaintiff's injury by accident on June 10, 2009."

In arguing for a different result, plaintiff appears to argue that the Form 60 automatically entitles her to additional

medical compensation. However, in Conclusion No. 3 the Commission addressed the implications of defendant's execution of the Form 60 and stated that:

> 3. Since Defendant filed a Form 60 admitting the compensability of Plaintiff's injury to her spine, specifically her "C2-3 Disk Herniation," there is a rebuttable presumption that the additional medical treatment for her spine is directly related to the compensable injury. . . . *Parsons v. Pantry, Inc.*, 126 N.C. App. 540, 485 S.E.2d 867 (1997). . . . Defendant has successfully rebutted the *Parsons* presumption with competent, credible medical evidence that any consequences of Plaintiff's work-related injury have resolved and that there is no need for ongoing medical treatment in this case related to Plaintiff's injury by accident on June 10, 2009. Therefore, the burden shifted back to Plaintiff to prove that her medical conditions are related to her accident at work on June 10, 2009. The Full Commission concludes that Plaintiff has failed to meet this burden, and therefore, Defendant is not responsible for ongoing medical compensation.

This conclusion acknowledges the presumption arising under *Parsons* from the Form 60, but concludes that defendant successfully rebutted the presumption and that plaintiff failed to meet her burden to produce competent medical evidence that her claim for ongoing medical benefits was "related to her accident at work on June 10, 2009." Plaintiff has not challenged the factual or evidentiary support for this conclusion of law, or disputed its legal validity. We hold that the Commission did

not err by concluding that plaintiff was not entitled to further medical benefits arising from this claim.

## V. Cessation of Indemnity Compensation

Finally, plaintiff asserts that the Commission "erred by allowing [defendant] to stop paying indemnity compensation to plaintiff." We disagree.

N.C. Gen. Stat. § 97-2(9) defines "disability" as an "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." In is well-established that:

> The burden is on the employee to show that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment. The employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment, (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment, (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment, or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowe's Product Distribution*, 108 N.C. App. 762, 765-66, 425 S.E.2d 454, 457 (1993) (citing *Hilliard v. Apex Cabinet*

*Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 684 (1982), *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 443-44, 342 S.E.2d 798, 809 (1986), and *Tyndall v. Walter Kidde Co.*, 102 N.C. App. 726, 730, 403 S.E.2d 548, 550 (1991)). In this case, the Commission concluded in relevant part that:

> 2. Plaintiff bears the burden of proving disability. . . . In the case at bar, Plaintiff has failed to prove disability under any prong of *Russell*. Moreover, the competent, credible evidence of record establishes that as of January 27, 2011, Plaintiff had regained the capacity to earn the same wages she was earning at the time of the injury in the same employment, and therefore, she is not disabled within the meaning of N.C. Gen. Stat. § 97-2(9). . . .

This conclusion is supported by the findings quoted above in relation to the issue of plaintiff's entitlement to further medical benefits, by the Commission's findings detailing plaintiff's physical abilities as depicted on the surveillance videos, and by its findings that:

> . . .

> 25. Dr. Brigham testified that he saw no acute distress when he examined Plaintiff and that he saw no objective basis as to why Plaintiff could not return to full duty work without restriction. . . .

> 26. . . . Based upon his review of the medical records, as well as the surveillance, Dr. Brooks opined that Plaintiff was capable of returning to full duty work without restriction and that she would not need further medical treatment.

Plaintiff acknowledges that these findings support the Commission's conclusion that she was no longer disabled. However, she appears to argue that, because the Form 60 specified that she had suffered a C2-3 disc herniation, the Commission could not properly rely upon an expert's opinion regarding disability unless the expert "formed this diagnosis [of a disc herniation] as a basis of their opinion." However, the Form 60, although establishing the compensability of her 9 June 2009 injury, did not give rise to any legal presumption regarding whether she remained disabled in 2012. The "use of the Form 60 did not entitle plaintiff to a presumption of continuing temporary disability[.]" *Sims,* 142 N.C. App. at 160, 542 S.E.2d at 282. The Commission's ruling on plaintiff's claim for disability required it to determine whether or not plaintiff was capable of returning to work. Plaintiff cites no authority in support of her contention that an expert's opinion on her ability to return to work in 2012 requires the expert to agree that in 2009 plaintiff suffered the specific injury set out in the Form 60. In other words, plaintiff fails to articulate how the fact that the Form 60 described her injury as a C2-3 disc herniation is relevant to the question of whether or not the symptoms arising from plaintiff's June 2009 compensable injury had resolved several years later. We hold that the expert

opinions of Dr. Brooks and Dr. Brigham that plaintiff was capable of returning to work were not invalidated by the fact that their assessment of plaintiff's condition was not based on their agreement that plaintiff suffered a disc herniation as a result of her compensable injury, and that the Commission did not err by ruling that plaintiff was no longer disabled.

For the reasons discussed above, we hold that the Commission did not err and that its Opinion and Award should be

AFFIRMED.

Judges HUNTER, Robert C., and BRYANT concur.