HUNTER, JR., Robert N., Judge.
 

 *229
 
 Shawn F. Patillo ("Plaintiff") and Goodyear Tire & Rubber Company ("Employer") and Liberty Mutual Insurance Company (collectively, "Defendants") appeal from an Opinion and Award filed 28 April 2016 by the Full North Carolina Industrial Commission. We reverse and remand in part and affirm in part.
 

 I. Factual and Procedural Background
 

 On 16 February 2011, Employer filed a Form 19 (Employer's Report of Employee's Injury or Occupational Disease to the Industrial Commission). On 7 October 2011, Plaintiff filed a Form 18 (Notice of Accident to Employer and Claim of Employee, Representative, or
 
 *230
 
 Dependent), stating he was injured as a result of a flatbed accident at his place of employment on 16 February 2011. On the same day, Plaintiff filed a Form 33 (Request that Claim be Assigned for Hearing), requesting compensation for days missed, disability pay, payment of medical expenses/treatment, and attorney's fees and costs.
 

 The parties executed a consent order on 28 March 2012. The Defendants admitted an accident occurred at Goodyear and Plaintiff sustained "some level of contusion to the lower back as a result of [the] accident[,]" but disputed the extent of injury beyond the contusion.
 

 On 24 October 2013, Deputy Commissioner Keischa M. Lovelace heard Plaintiff's case. The parties stipulated to the employee-employer relationship, the insurance carried by Employer, and that Employer should provide a Form 22 for wage calculation. Deputy Commissioner Lovelace issued an Opinion and Award on 18 December 2014. The Opinion and Award found and concluded Plaintiff sustained a compensable injury, which was causally related to Plaintiff's lower back pain. Deputy Commissioner Lovelace awarded Plaintiff temporary total disability compensation beginning 6 March 2012 until the time of the hearing, but denied Plaintiff's request for temporary total disability compensation from 13 May 2011 to 6 March 2012. Employer gave proper notice of appeal to the Full Commission ("the Commission") on 23 December 2014.
 

 On 8 July 2015, the Commission filed an Interlocutory Order and reopened the record for the receipt of additional evidence. The Commission ordered the parties to confer and agree on a physician to conduct Plaintiff's medical evaluation.
 

 On 22 July 2015, Plaintiff filed a motion with the Commission, proposing seven physicians to conduct Plaintiff's medical evaluation. On 23 July 2015, Employer filed a Motion to Amend, Clarify, and/or Consideration,
 
 *909
 
 asking the Commission to allow both parties to depose medical providers who examined Plaintiff. On 3 August 2015, Employer filed a response to Plaintiff's motion, arguing Plaintiff's motion was moot. On the same day, Plaintiff filed a response, arguing there was no need for evidence on the issue of disability and additional evidence was only needed regarding causation.
 

 In response, Commissioner Bernadine S. Ballance issued an order on 27 August 2015, holding Employer's 23 July 2015 motion in abeyance. Commissioner Ballance also ordered the parties to comply with the 8 July 2015 order by 30 September 2015. On 29 August 2015, Plaintiff
 
 *231
 
 filed a Motion for Additional Direction regarding the 8 July 2015 Order. On 30 September 2015, Plaintiff filed a response to the 8 July 2015 Order.
 

 The Commission filed its Opinion and Award on 28 April 2016. The Commission found the following facts.
 

 Plaintiff, a forty-nine year old male at the time of the hearing, worked at Employer since August 2007. At the time of the incident, Plaintiff worked as a press operator. As a press operator, Plaintiff transferred uncured
 
 [1]
 
 tires from a flatbed trailer onto the loader pan of the press machine for curing. Plaintiff monitored fifteen presses, ensuring the machines operated properly and removing tires after they cured.
 

 In the early morning of 16 February 2011, Plaintiff unloaded tires from a stationary, unattached flatbed to a press machine loader pan. Nearby, a trucker drove a powered industrial truck with an attached flatbed down the press row. The flatbed attached to the truck "jackknifed" the unattached flatbed, which hit Plaintiff in his lower back and knocked Plaintiff to the floor. Plaintiff immediately felt pain from his back to his hips and legs, and Plaintiff was unable to stand up.
 

 Immediately following the collision, a "Code Blue" was called, indicating an accident occurred. Workers from the onsite medical clinic arrived and transported Plaintiff to the clinic. Plaintiff complained of pain in his left lower back, groin, and hip area. The onsite medical clinic treated Plaintiff, scheduled him for an evaluation the next day, and recommended Plaintiff only perform "off-standard"
 
 [2]
 
 work. Plaintiff arrived at the onsite medical clinic before his shift on the evening of 16 February 2011 for his examination. Plaintiff informed his evaluator the pain had worsened since the night before and Plaintiff would not be capable of lifting tires due to the pain. The onsite medical clinic team recommended "off-standard" work.
 

 On 17 February 2011, Leslie A. Byrne ("Nurse Byrne"), a nurse practitioner at the onsite medical clinic, evaluated Plaintiff. Plaintiff, once again, complained of pain in the left side of his back, left hip, and left knee. Plaintiff displayed contusions. Nurse Byrne restricted Plaintiff to
 
 *232
 
 "off-standard" work with help with large tires. Plaintiff worked "off-standard" until 4 April 2011.
 

 From 16 February 2011 to 13 May 2011, Plaintiff received treatment from the onsite medical clinic. The treatment included pain medication and physical therapy. Physical therapy ended on 22 March 2011, when Plaintiff reported less frequent and less intense pain.
 

 On 5 April 2011, Plaintiff returned to on-standard work. While performing his regular job duties, Plaintiff's back pain increased. Plaintiff told Nurse Byrne he wanted a second opinion regarding his back injury. Although Nurse Byrne prescribed various medications, Plaintiff still reported back pain.
 

 Not only did Plaintiff seek medical care at Employer's onsite clinic, he also went to Physician's Express urgent care on 20 February 2011. The next day, Plaintiff sought treatment at Northside Urgent Care for pain resulting from the injury.
 

 *910
 
 Plaintiff applied for a wind-up operator position at Employer. Employer hired Plaintiff for this position. However, after training, Plaintiff failed the certification test to be a wind-up operator because he could not physically perform the job tasks.
 
 [3]
 
 Consequently, Plaintiff returned to his press operator position on 5 April 2011.
 

 While visiting Northside Urgent Care on 30 April 2011 for his asthma, Plaintiff complained of lower back pain. Physician Assistant Aubrey Reid ordered a Magnetic Resonance Image ("MRI") of Plaintiff's lumbar spine. On 12 May 2011, Plaintiff received an MRI. On 13 May 2011, Physician Assistant Kerry Clancy saw a small meningioma or nerve sheath tumor in Plaintiff's lumbar spine. As a result, Clancy restricted Plaintiff to two weeks of sit-down work and scheduled a neurosurgical evaluation. Employer received notice of Plaintiff's restriction to sit-down work, but Employer indicated on its "Modified Work Authorization Form Medical Department" no modified work was available. Notably, Employer indicated on the form Plaintiff's injury was "non-occupational."
 
 [4]
 
 Employer did not assign Plaintiff to a sit-down work only position. Plaintiff has not worked since 13 May 2011. On 14 June 2011, Physician Assistant
 
 *233
 
 Clancy treated Plaintiff for lower back pain. Plaintiff's medical provider restricted him to sit-down work only for two weeks.
 

 Plaintiff reported to Dr. David Jones on 1 November 2011. Dr. Jones reviewed Plaintiff's lumbar spine MRIs. Dr. Jones was concerned about lesions on Plaintiff's lumbar spine and put the work-related back pain "on the back burner." On 21 December 2011, Dr. Jones referred Plaintiff to Dr. Gabriel Pantol, a neurologist.
 

 Dr. Pantol evaluated Plaintiff on 6 March 2012 and 11 May 2012. Dr. Pantol opined Plaintiff's spine lesions were asymptomatic and Plaintiff's back pain was not related to the lesions or sarcoidosis. Dr. Pantol recommended Plaintiff be evaluated by a pain specialist for his back pain.
 

 On 13 May 2011, Plaintiff reported to Dr. Robert Ferguson, an expert in internal medicine. Based on Dr. Ferguson's testimony, the Commission found Plaintiff's restriction to "sit-down work" related to his injury and low back pain and he needed to be evaluated for the spinal lesions. Additionally, Plaintiff had complained of back pain, which limited his capacity to perform his job duties continuously from the date of injury.
 

 Employer never filed an Industrial Commission form to admit or deny Plaintiff's claim. Additionally, Employer never indicated to the Industrial Commission whether Plaintiff's claim was being treated as "medical only." With regard to the parties' consent order, the Commission found the consent order resulted in a rebuttable presumption Plaintiff's lower back injury was related to his compensable 16 February 2011 injury and resulting back contusion.
 

 By consent of the parties, Plaintiff reported to Dr. John Buttram, a neurosurgeon, on 25 April 2012. Dr. Buttram diagnosed Plaintiff with non-mechanical back pain and recommended conservative treatment from a physiatrist. Dr. Buttram did not address restrictions for Plaintiff's non-mechanical back pain. Dr. Buttram opined to a reasonable degree of medical certainty "a contusion to the paraspinous musculature
 
 [5]
 
 is a reasonable assumption for Plaintiff's non-mechanical back pain, and if severe enough, his injury could prevent him from returning to the kind of work that he did before."
 

 The Commission found Plaintiff's work-related injury caused his contusion and resulting non-mechanical back pain. The Commission
 
 *234
 
 explicitly relied on, and gave great weight to, Dr. Buttram's, Dr. Pantol's, and
 
 *911
 
 Dr. Ferguson's opinion testimonies. The Commission further found Defendants failed to rebut the presumption that Plaintiff's need for medical treatment was causally related to the 16 February 2011 injury. Moreover, even without the presumption, the Commission found Plaintiff proved the 16 February 2011 injury caused his lower back contusion and continuing non-mechanical back pain.
 

 Turning to the issue of disability compensation, on 13 May 2011, Plaintiff's medical providers assigned him to sit-down work only. However, Employer was unable to accommodate Plaintiff's work restrictions, and Plaintiff did not return to work on 13 May 2011.
 
 [6]
 
 Plaintiff was restricted to "sit-down only" work until 6 March 2012, when he reported to Dr. Pantol. At his deposition on 21 March 2014, Dr. Pantol first opined, to a reasonable degree of medical certainty, Plaintiff was disabled and unable to work when Dr. Pantol saw him on 6 March 2012 and May 2012. However, on cross examination, Dr. Pantol limited his opinion of Plaintiff's disability to the 11 May 2012 visit. Dr. Pantol did not think the 6 March 2012 visit was a basis to remove Plaintiff from work.
 

 Based upon Dr. Pantol's testimony and a review of the record, the Commission found Plaintiff failed to prove he was totally incapable of working in any employment since 6 March 2012. The Commission further found since 6 March 2012, Plaintiff failed to show he made a reasonable effort to find suitable employment, or due to preexisting conditions and his work related restrictions, a search would have been futile.
 
 [7]
 
 The Commission noted Plaintiff's testimony indicating he still considered himself an employee of Employer, which means Plaintiff may have been on a leave of absence or a non-work related disability.
 

 Regarding the 8 July 2015 Order, the Commission found the parties failed to comply with the order, and also failed to comply with the 28 August 2015 Order. Specifically, the parties failed to agree on a physician or a letter to send to a physician for a medical evaluation of Plaintiff. As such, the Commission reconsidered the record and found the 8 July 2015 and 28 August 2015 Orders should be vacated.
 

 *235
 
 Accordingly, the Commission concluded based on a preponderance of the evidence, the
 
 Parsons
 
 presumption applied to Plaintiff's injury, due to the parties' Consent Order. Defendants failed to rebut the
 
 Parsons
 
 presumption. The Commission further concluded, even without the presumption, Plaintiff proved the 16 February 2011 injury caused the contusion and the continuing non-mechanical back pain. The Commission awarded payment for all related medical treatment for Plaintiff's contusion and causally related injuries.
 

 Turning to disability, the Commission concluded Plaintiff failed to prove he had been totally incapable of working since 6 March 2012. Additionally, the Commission concluded Plaintiff failed to show he made a reasonable effort to find suitable employment, or due to preexisting conditions and his work related restrictions, a search would have been futile.
 

 Plaintiff filed notice of appeal of the Commission's Opinion and Award to this Court on 4 May 2016. Defendants filed notice of appeal on 2 June 2016.
 

 II. Jurisdiction
 

 This Court has jurisdiction over appeals from the Industrial Commission pursuant to N.C. Gen. Stat. § 7A-29(a) and
 
 N.C. Gen. Stat. § 97-86
 
 (2016).
 

 III. Standard of Review
 

 Review of an Opinion and Award of the Industrial Commission "is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law.... This 'court's duty goes no further than to determine whether the record contains any evidence tending to support the finding.' "
 

 *912
 

 Richardson v. Maxim Healthcare/Allegis Grp.,
 

 362 N.C. 657
 
 , 660,
 
 669 S.E.2d 582
 
 , 584 (2008) (citation omitted) (quoting
 
 Anderson v. Lincoln Constr. Co.,
 

 265 N.C. 431
 
 , 434,
 
 144 S.E.2d 272
 
 , 274 (1965) ).
 

 "The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony."
 
 Anderson
 
 ,
 
 265 N.C. at 433-34
 
 ,
 
 144 S.E.2d at 274
 
 . "This Court does not weigh the evidence; if there is any competent evidence which supports the Commission's findings, we are bound by their findings even though there may be evidence to the contrary."
 
 Peagler v. Tyson Foods, Inc.
 
 ,
 
 138 N.C.App. 593
 
 , 597,
 
 532 S.E.2d 207
 
 , 210 (2000) (citing
 
 Hansel v. Sherman Textiles
 
 ,
 
 304 N.C. 44
 
 ,
 
 283 S.E.2d 101
 
 (1981) ).
 

 *236
 

 IV. Analysis
 

 A. Plaintiff's Appeal
 

 We review Plaintiff's contentions in three parts: (1) the conclusion of law regarding whether Plaintiff made a reasonable effort to find suitable employment; (2) findings regarding the Form 22; and (3) Plaintiff's motion to dismiss Defendants' appeal.
 

 1. Conclusion of Law Number Nine
 

 On appeal, Plaintiff contends the Commission erred by concluding Plaintiff failed to make a reasonable effort to find suitable employment. We agree.
 

 Under North Carolina Workers' Compensation Law, an employee must prove three factual elements to support the legal conclusion of disability:
 

 (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.
 

 Medlin v. Weaver Cooke Constr., LLC
 
 ,
 
 367 N.C. 414
 
 , 420,
 
 760 S.E.2d 732
 
 , 735 (2014) (quoting
 
 Hilliard v. Apex Cabinet Co.
 
 ,
 
 305 N.C. 593
 
 , 595,
 
 290 S.E.2d 682
 
 , 683 (1982) ). An employee can establish disability in one of four ways:
 

 (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.
 

 Russell v. Lowes Prod. Distrib.
 
 ,
 
 108 N.C.App. 762
 
 , 765,
 
 425 S.E.2d 454
 
 , 457 (1993) (internal citations omitted). An employee can prove the first
 
 *237
 
 two statutory elements through any of the four methods listed in
 
 Russell
 
 , "but these methods are neither statutory nor exhaustive."
 
 Medlin
 
 ,
 
 367 N.C. at 422
 
 ,
 
 760 S.E.2d at 737
 
 .
 

 Regarding an employee's efforts to obtain employment, there is no general rule for determining the reasonableness of an employee's job search.
 
 Gonzalez v. Tiny Maids, Inc.
 
 , --- N.C.App. ----, ----,
 
 768 S.E.2d 886
 
 , 894 (2015). Rather, "[t]he Commission [is] free to decide" whether an employee "made a reasonable effort to obtain employment under the second
 
 Russell
 
 option."
 
 Perkins v. U.S. Airways
 
 ,
 
 177 N.C.App. 205
 
 , 214,
 
 628 S.E.2d 402
 
 , 408 (2006).
 

 "Further, the Commission 'must make specific findings of fact as to each material fact upon which the rights of the parties in a case involving a claim for compensation depend. Thus, the Commission must find those facts which are necessary to support its conclusions of law.' "
 
 Salomon v. Oaks of Carolina
 
 ,
 
 217 N.C.App. 146
 
 , 152,
 
 718 S.E.2d 204
 
 , 208 (2011) (quoting
 
 Johnson v. Herbie's Place
 
 ,
 
 157 N.C.App. 168
 
 , 172,
 
 579 S.E.2d 110
 
 , 113 (2003) ).
 

 Here, Plaintiff contends Conclusion of Law Number Nine is not supported by the Commission's findings of fact. Specifically, Plaintiff
 
 *913
 
 argues the Commission failed to make the requisite findings of fact regarding Plaintiff's search for employment. The crux of Plaintiff's argument is Plaintiff was not required to search for employment outside of Employer for his search to be considered "reasonable". Defendants contend Plaintiff's search for employment was insufficient to establish disability under
 
 Russell
 
 .
 

 Regarding Plaintiff's employment, the Commission found the following:
 

 49. On the issue of disability, on May 13, 2011, Plaintiff was assigned the following restrictions: "sit down work only ... two weeks; scheduling neurosurgery." Defendant-Employer was unable to accommodate Plaintiff's sedentary restrictions and Plaintiff did not return to work on or about May 13, 2011. Plaintiffs "sit down only" work restrictions were continued by various medical providers until March 6, 2012, when Plaintiff presented to Dr. Pantol for a neurosurgical evaluation. On March 6, 2012, Dr. Pantol ruled out neuro-sarcoidosis and determined that Plaintiff's non-work related spinal lesions were asymptomatic. During his examination and treatment of Plaintiff, Dr. Pantol also addressed Plaintiff's ongoing non-mechanical
 
 *238
 
 back pain related to his compensable February 16, 2011 injury by accident.
 

 50. Plaintiff is not seeking disability compensation prior to his March 6, 2012 evaluation with Dr. Pantol.
 

 51. Plaintiff contends, based upon the deposition testimony of Dr. Pantol and the evidence presented, that he has proven he was temporarily totally disabled as of March 6, 2012 and continues to be temporarily totally disabled. At his March 21, 2014 deposition, Dr. Pantol was asked to give an opinion on the issue of whether Plaintiff's non-mechanical back pain was disabling. During direct examination, Dr. Pantol was asked: "Okay. And do you have an opinion within a reasonable degree of medical certainty whether Mr. Patillo was disabled and unable to work at the time you saw him on March 6, 2012 and May 2012?" Dr. Pantol answered, "Yes, from the description, that pretty much any type of activity would worsen his pain." However, during cross-examination, Dr. Pantol was asked, "Okay. So then your opinion regarding the work only involves the May 11, 2012, visit, correct?" He answered, "That would be it exactly." During re-direct examination, Dr. Pantol was again asked his opinion regarding Plaintiff's disability and testified, "Based on my first visit [March 6, 2012] ... with a pain level of one or two, I don't think is a basis [to remove Plaintiff from work]. On the second visit [May 11, 2012], I would probably take him out of work for at least a couple of days of rest." Considering the totality of his testimony, the Full Commission finds that Dr. Pantol opined that he would have removed Plaintiff from work due to his non-mechanical back pain for a period of approximately three days.
 

 52. Dr. Buttram testified that he did not assign any work restrictions to Plaintiff and it would have been speculative for him to assign retroactive restrictions as of the date of his deposition.
 

 53. Based upon a preponderance of the evidence in view of the entire record, the Full Commission finds that, except for the three days in May 2012 when Dr. Pantol felt Plaintiff should have been removed from work, Plaintiff has not proven on this record that he has been totally incapable of working in any employment since March 6, 2012.
 

 *239
 
 Plaintiff is not seeking indemnity compensation prior to March 6, 2012, the date of his evaluation with Dr. Pantol. Since March 6, 2012, Plaintiff has not shown that he made a reasonable effort to find suitable employment, or that due to preexisting conditions and his work related restrictions, it would have been futile for him to seek suitable employment. Plaintiff testified at the hearing before the Deputy Commissioner that he still considered himself to be an employee of Defendant-Employer. The evidence indicates that he may have been on a leave of absence or a non-work related disability.
 

 Based on these findings, the Commission concluded:
 

 9. On the issue of disability, the Full Commission concludes that, except for the three days in May 2012 when Dr. Pantol
 
 *914
 
 felt Plaintiff should have been removed from work, Plaintiff has not proven on this record that he has been totally incapable of working in any employment since March 6, 2012. Plaintiff is not seeking indemnity compensation prior to March 6, 2012, the date of his evaluation with Dr. Pantol. Since March 6, 2012, Plaintiff has not shown that he made a reasonable effort to find suitable employment, or that due to preexisting conditions and his work related restrictions, it would have been futile for him to seek suitable employment. Plaintiff testified at the hearing before the Deputy Commissioner that he still considered himself to be an employee of Defendant-Employer.
 
 N.C. Gen. Stat. § 97-29
 
 ;
 
 Russell v. Lowes Prod. Distrib.
 
 ,
 
 108 N.C.App. 762
 
 ,
 
 425 S.E.2d 454
 
 (1993).
 

 We conclude the Commission's Conclusion of Law Number Nine is not supported by competent evidence. The order and opinion contains no explanation for the Commission's determination of "reasonableness."
 
 Franklin v. Broyhill Furniture Indus. Inc.
 
 , No. COA10-1334,
 
 2011 WL 3890989
 
 , at *6-*7 (unpublished) (N.C. Ct. App. Sept. 6, 2011) (requiring the Commission to explain the basis for its determination of "reasonableness").
 
 See also
 

 Freeman v. Rothrock
 
 ,
 
 202 N.C.App. 273
 
 , 277-79,
 
 689 S.E.2d 569
 
 , 572-74 (2010) (affirming an award of disability when the Commission explained the basis for its determination of "reasonableness").
 

 In
 
 Franklin
 
 , this Court reversed and remanded in part an Opinion and Award where the Commission failed to explain its determination
 
 *240
 
 of "reasonableness."
 
 2011 WL 3890989
 
 , at *6-*7, *12. The Commission found the following in regards to the reasonableness of a job search:
 

 At the hearing before the Deputy Commissioner, Plaintiff testified that he has attempted to obtain employment as a truck driver since his termination with Defendant. Plaintiff's job search log was introduced into evidence and indicated that since his termination on May 29, 2008, Plaintiff made weekly contacts to various companies that employ truck drivers. Plaintiff testified that any available positions were not within his physical restrictions. The undersigned finds by the greater weight of the evidence that Plaintiff has conducted a reasonable job search without success and that Plaintiff's inability to find or hold other employment is related to his work injury.
 

 Id.
 
 at *5. The
 
 Franklin
 
 court relied on
 
 Freeman v. Rothrock
 
 ,
 
 202 N.C.App. 273
 
 ,
 
 689 S.E.2d 569
 
 , and held "the Commission's finding that Plaintiff had conducted a reasonable search for employment was not supported by sufficient factual findings."
 
 Id.
 
 at *7. The Court characterized the Commission's determination of reasonableness as "unsupported" and "conclusory."
 
 Id.
 
 at *7. The Court concluded:
 

 the Commission was required to make findings of fact explaining the reason that it deemed Plaintiff's job search to be "reasonable" and that its failure to make such findings constituted an error of law requiring us to reverse this portion of the Commission's order and remand this case to the Commission for further proceedings not inconsistent with this opinion, including the making of adequate findings of fact....
 

 Id.
 
 at *7.
 

 We note
 
 Franklin
 
 is not a published decision. However, we hold the
 
 Franklin
 
 Court's requirement for an explanation of the determination of "reasonableness" is persuasive. As such, we hold the Commission must explain its basis for its determination of "reasonableness." Here, the Commission's finding regarding Plaintiff's search is merely a conclusion that Plaintiff's search for employment was unreasonable. Such a conclusory finding is insufficient to support the Commission's conclusion regarding Plaintiff's failure to establish his disability because he failed to make a "reasonable" job search. Accordingly, we reverse this portion of the Opinion and Award and remand to the Commission
 
 *241
 
 for further proceedings not inconsistent with this opinion.
 
 See
 

 Munns v. Precision Franchising, Inc.
 
 ,
 
 196 N.C.App. 315
 
 , 319,
 
 674 S.E.2d 430
 
 , 434 (2009) (remanding to Commission when the Commission failed to make necessary findings).
 

 In Plaintiff's brief, he asks this Court to instruct the Commission on remand "to consider
 
 *915
 
 whether, in light of the fully favorably decision in his Social Security Disability claim, he has met his burden of proving that it would futile for him to seek other employment under the third prong of
 
 Russell
 
 ."
 

 However, "it is not a proper function of courts 'to give advisory opinions....' "
 
 Martin v. Piedmont Asphalt & Paving
 
 ,
 
 337 N.C. 785
 
 , 788,
 
 448 S.E.2d 380
 
 , 382 (1994) (quoting
 
 Adams v. N. Carolina Dep't of Natural and Econ. Res.
 
 ,
 
 295 N.C. 683
 
 , 704,
 
 249 S.E.2d 402
 
 , 414 (1978) ). It is the Commission's role to determine whether Plaintiff meets the third prong of
 
 Russell
 
 . Thus, instructing the Commission on remand whether Plaintiff has met his burden under
 
 Russell
 
 would result in this Court issuing an advisory opinion. As such, we decline Plaintiff's invitation to advise the Commission on this issue.
 

 2. Form 22
 

 Plaintiff next argues the Commission committed reversible error by failing to make a finding regarding Defendants' failure to submit a Form 22. We disagree.
 

 It is well established the Commission is required to address all issues necessary to resolve a Plaintiff's claim.
 
 See
 

 Joyner v. Rocky Mount Mills
 
 ,
 
 92 N.C.App. 478
 
 , 482,
 
 374 S.E.2d 610
 
 , 613 (1988). A Form 22 (Statement of Days Worked and Earnings of Injured Employee) is an aid in calculating average weekly wages, pursuant to
 
 N.C. Gen. Stat. § 97-2
 
 (5), when indemnity compensation is granted.
 

 In this case, the parties stipulated Defendants would provide a Form 22. Deputy Commissioner Lovelace ordered Defendants to provide a Form 22 within thirty days of the order. In the Commission's order, the Commission found and concluded the following:
 

 The parties stipulated that Defendants would provide a Form 22 for calculation of Plaintiff's wages. The Industrial Commission file does not contain a Form 22. This Opinion and Award does not address Plaintiff's average weekly wage and compensation rate. Defendants shall provide a Form 22 to Plaintiff.
 

 *242
 
 In its Award, the Commission denied Plaintiff's claim for indemnity compensation. Additionally, the Commission stated the following: "This Opinion and Award does not address Plaintiff's average weekly wage and compensation rate. Defendants shall provide a Form 22 to Plaintiff."
 

 Plaintiff argues he is entitled to a specific finding acknowledging Defendants failed to comply with the order. Plaintiff contends the Commission's duty to "resolve all matters in controversy before it" requires the finding.
 
 Joyner
 
 ,
 
 92 N.C.App. at 482
 
 ,
 
 374 S.E.2d at 613
 
 . Plaintiff points to several opinions and awards, in which either a deputy commissioner or the Commission found an employer failed to submit a Form 22.
 
 See
 

 Thompson v. N.C. Centel Tel.
 
 ,
 
 2000 WL 1562940
 
 at *2, I.C. No. 706622 (2000);
 
 McLaughlin v. Sandoz Chem. Corp.
 
 ,
 
 1998 WL 710019
 
 at *5, I.C. No. 371437 (1998).
 

 Defendants argue a Form 22 was not required because disability was not awarded by the Commission. Thus, Defendants contend, the Commission did properly determine all issues in controversy before it.
 

 In this case, the Commission's findings are sufficient to address all matters in controversy. A Form 22 is used for wage calculation upon the grant of indemnity compensation.
 
 See
 

 N.C. Gen. Stat. § 97-2
 
 (5). Here, the Commission denied Plaintiff's request for indemnity compensation. Thus, a Form 22 was not necessary pursuant to the Commission's Award, and Plaintiff was not entitled to a specific finding regarding Defendants' failure to submit a Form 22. Accordingly, this assignment of error is without merit.
 
 [8]
 

 3. Motion to Dismiss Defendants' Appeal
 

 Lastly, Plaintiff contends Defendants failed to timely file notice of appeal. In his argument, Plaintiff reasserts the arguments included in his Motions to Dismiss, filed 20 July 2016 and 26 July 2016. This Court denied
 
 *916
 
 Plaintiff's motions to dismiss in orders entered 5 August 2016.
 

 B. Defendants' Appeal
 

 We review Defendants' contentions in three parts: (1) applicability of the
 
 Parson
 
 s presumption; (2) whether Defendants rebutted the
 
 Parsons
 
 presumption; and (3) whether the Commission properly considered the entirety of the medical expert testimony.
 

 *243
 

 1. Whether the
 
 Parsons
 
 Presumption Applies
 

 Defendants argue the
 
 Parsons
 
 presumption does not apply because "Plaintiff's non-mechanical back condition is not 'the very injury' Defendants accepted pursuant to the consent order." We disagree.
 

 In
 
 Parsons v. Pantry, Inc.
 
 ,
 
 126 N.C.App. 540
 
 ,
 
 485 S.E.2d 867
 
 (1997), this Court held after a workers' compensation claimant meets the initial burden of proving the compensability of an injury, there arises a presumption that further medical treatment is directly related to the compensable injury.
 
 126 N.C.App. at 541-42
 
 ,
 
 485 S.E.2d at 869
 
 .
 
 See also
 

 Miller v. Mission Hosp., Inc.
 
 ,
 
 234 N.C.App. 514
 
 , 519,
 
 760 S.E.2d 31
 
 , 35 (2014). The presumption exists because "[t]o require plaintiff to reprove causation each time [he] seeks treatment for the very injury that the Commission has previously determined to be the result of a compensable accident is unjust and violates our duty to interpret the Act in favor of injured employees."
 
 Parsons
 
 ,
 
 126 N.C.App. at 542
 
 ,
 
 485 S.E.2d at 869
 
 .
 

 However, the
 
 Parsons
 
 presumption is not without limits. The presumption applies only to "the very injury" determined to be compensable.
 
 Clark v. Sanger Clinic, P.A.
 
 ,
 
 175 N.C.App. 76
 
 , 79,
 
 623 S.E.2d 293
 
 , 296 (2005) ;
 
 Perez v. Am. Airlines/AMR Corp.
 
 ,
 
 174 N.C.App. 128
 
 , 135-36,
 
 620 S.E.2d 288
 
 , 292-94 (2005). Although limited to the very injury of compensability, "[t]he presumption of compensability applies to future symptoms allegedly related to the original compensable injury."
 
 Perez
 
 ,
 
 174 N.C.App. at 136-37
 
 ,
 
 620 S.E.2d at
 
 293 n.1.
 

 Here, the parties' consent order stated:
 

 Defendants, in this Consent Order, agree to admit that Employee was involved in an accident during the course and scope of his employment with Employer-Defendant on February 16, 2011, and admit that Employee sustained some level of contusion to the lower back as a result of such accident. The parties continue to dispute the extent of injury beyond a contusion.
 

 At the outset, we note the
 
 Parsons
 
 presumption applies to the parties' consent order.
 
 See
 

 id.
 
 at 135-36,
 
 620 S.E.2d at 293
 
 (applying the
 
 Parsons
 
 presumption where employer admitted compensability of the plaintiff's injury). The dispute here regards the extent of the
 
 Parsons
 
 presumption.
 

 Defendants contend the
 
 Parsons
 
 presumption does not apply to Plaintiff's ongoing back pain because the parties only consented to the
 
 *244
 
 compensability of a contusion on Plaintiff's back, not to Plaintiff's continuing back pain. Plaintiff argues "[w]hether the presumption of compensability is limited to the 'very injury' previously determined to be compensable is irrelevant in this case, because [Plaintiff] alleged (and the Full Commission ultimately found) that his current low back pain is related to the 'very injury' determined to be compensable in the Consent Order."
 

 Here, the Full Commission properly applied the
 
 Parsons
 
 presumption to Plaintiff's continuing back pain. The parties' consent order resolved the compensability of Plaintiff's contusions. Plaintiff's continuing back pain is a "future symptom allegedly related to the original compensable injury[,]" with Plaintiff's contusions being the compensable injury.
 
 Id.
 
 at 136-37,
 
 620 S.E.2d at
 
 293 n.1. As such, Plaintiff was entitled to a rebuttable presumption that his continuing back pain was directly related to the original compensable injury. Therefore, our next inquiry is whether Defendants rebutted the
 
 Parsons
 
 presumption.
 

 2. Whether Defendants Rebutted the
 
 Parsons
 
 Presumption
 

 Defendants next argue the Commission erred in concluding Defendants failed to rebut the
 
 Parsons
 
 presumption. We disagree.
 

 *917
 
 Once the
 
 Parsons
 
 presumption applies, the burden rests on the Defendants to rebut the presumption. "The employer may rebut the presumption with evidence that the medical treatment is not directly related to the compensable injury."
 
 Id.
 
 at 135,
 
 620 S.E.2d at
 
 292 (citing
 
 Reinninger v. Prestige Fabricators, Inc.
 
 ,
 
 136 N.C.App. 255
 
 , 259,
 
 523 S.E.2d 720
 
 , 723 (1999) ).
 

 Regarding whether Defendants rebutted the
 
 Parsons
 
 presumption, the Commission concluded:
 

 3. The
 
 Parsons
 
 presumption is rebuttable. In order to rebut this presumption, Defendants have the burden of producing evidence showing Plaintiff's non-mechanical back pain and his need for medical treatment for his non-mechanical back pain are unrelated to the compensable injury. Defendants must present expert testimony or affirmative medical evidence tending to show that the treatment Plaintiff seeks for his current low back condition is not directly related to his admittedly compensable back injury.
 

 Id.
 

 ;
 
 Perez v. Am. Airlines/AMR Corp.
 
 ,
 
 174 N.C.App. 128
 
 , 136-37,
 
 620 S.E.2d 288
 
 , 293 (2005).
 

 *245
 
 4. Where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury.
 
 Click v. Pilot Freight Carriers
 
 ,
 
 300 N.C. 164
 
 ,
 
 265 S.E.2d 389
 
 (1980). Additionally, the entirety of causation evidence must meet the reasonable degree of medical certainty standard necessary to establish a causal link.
 
 Holley v. ACTS, Inc.
 
 ,
 
 357 N.C. 228
 
 ,
 
 581 S.E.2d 750
 
 (2003) ;
 
 Young v. Hickory Bus. Furn.
 
 ,
 
 353 N.C. 227
 
 ,
 
 538 S.E.2d 912
 
 (2000). Defendants did not present sufficient medical evidence to rebut the
 
 Parsons
 
 presumption.
 
 Parsons v. Pantry, Inc.
 
 ,
 
 126 N.C.App. 540
 
 ,
 
 485 S.E.2d 867
 
 (1997) ;
 
 Perez v. Am. Airlines/AMR Corp.
 
 ,
 
 174 N.C.App. 128
 
 ,
 
 620 S.E.2d 288
 
 (2005) ;
 
 Carr v. HHS (Caswell Ctr.)
 
 ,
 
 218 N.C.App. 151
 
 ,
 
 720 S.E.2d 869
 
 (2012).
 

 Defendants point to testimony from Physical Therapist Frank Murray and Dr. David Jones. First, regarding Dr. Murray's testimony, Dr. Murray did not testify to a reasonable degree of medical certainty regarding causation between Plaintiff's back pain and his work injury. Defendants point to the following piece of testimony from the cross-examination of Dr. Murray:
 

 A. [O]n the 22nd of March he had been feeling better overall, is what he reported. So, I discharged him. And then when he returned on April 5th, he had had an increase in pain.
 

 Q. Okay. And when he reported the increasing pain, he reported that it occurred the prior weekend, when he was not working. Is that correct?
 

 A. Yes.
 

 Q. And do you have an opinion or would you agree that the presentation on April 5th of 2011 was secondary to the reported activities or the reported flare-up at home the weekend prior to that examination?
 

 A. Would I agree that that was-what it was related to, in other words?
 

 Q. Correct.
 

 A. Yes.
 

 *246
 
 However, this testimony does not adequately show Plaintiff's current low back pain is separate and distinct from his work injury. As such, the testimony from Dr. Murray does not rebut the
 
 Parsons
 
 presumption.
 

 Defendants next point to testimony from Dr. Jones. Specifically, Defendants point to the following exchange in their direct examination of Dr. Jones:
 

 I don't think that there is a[n] association between ... his back pain, and that trauma he suffered ... whatever back pain he had, for a short time after the injury, was probably related to the injury itself. Why he had long term, chronic back pain, I cannot answer....
 

 However, Defendants mischaracterize Dr. Jones's testimony. In that part of his deposition, Dr. Jones testified regarding lesions Plaintiff suffered on his spine, which were admittedly not related to Plaintiff's injury at work.
 

 A full review of Dr. Jones's testimony shows Dr. Jones never gave testimony to a
 
 *918
 
 reasonable degree of medical certainty regarding causation for Plaintiff's long term, continuing back pain. In fact, in the same excerpt included in Defendants' brief, Dr. Jones further testified he did not "spend any time with [Plaintiff] in any of our visits talking about his back pain and the likely causation of that." Additionally, Dr. Jones testified:
 

 Q. And so, Doctor, fast-forwarding to today, if [Plaintiff] was still having back complaints as of today, would you have an opinion as to whether such current back complaints would, more likely than not, be related to the 2011 incident or to some other cause?
 

 A. It's so-and it's really hard for me to form any opinion regarding that because I never really spent time with him talking about that. So I don't know that I have a strong opinion one way or the other, as far as the etiology of his back pain, just because that was never my focus and I never thought these lesions were the cause of his back pain. So again, I put the work related injury and the back pain on the back burner and tried to find a diagnosis for him.... So literally, I don't know if I have a real strong opinion [ ] as to whether or not his current pain or residual pain or whatever pain he's had over the years is related to that trauma or not.
 

 *247
 
 On cross-examination, the following exchange occurred:
 

 Q: Doctor, you just said that nothing you just read changed your opinions on causation. You had not given us any opinion on causation, is that correct, in this case?
 

 A. No.
 

 Q: That's not-
 

 A: I have-
 

 Q: -correct?
 

 A: No, I have not given any opinions regarding causation. I don't have an opinion regarding causation.
 

 Q: Okay. And to be clear, you have general medical opinions, but no specific medical opinions on [Plaintiff] and his facts involving his workers' compensation case?
 

 A: I have no opinion regarding causation for him. I don't know myself, I don't know-even if I could try to read these notes and come up with an opinion, I don't know yet what I would think. I really have no opinion regarding causation. It wasn't my focus ever seeing him.
 

 Defendants failed to present evidence showing the medical treatment was not directly related to the compensable injury.
 
 See
 

 Perez
 
 ,
 
 174 N.C.App. at 135
 
 ,
 
 620 S.E.2d at 292
 
 . Neither Dr. Murray nor Dr. Jones testified regarding causation between Plaintiff's back pain and the work injury. Accordingly, we hold the Commission did not err in concluding Defendants failed to rebut the
 
 Parsons
 
 presumption and this assignment of error is without merit.
 
 [9]
 

 3. Entirety of Medical Evidence
 

 Next, we consider whether the Commission erred by failing to make sufficient findings of fact to resolve all of the material issues raised by the evidence. In particular, Defendants argue the Commission failed to make sufficient findings regarding testimony of Defendants' witnesses, Dr. Murray and Dr. Jones. We disagree.
 

 *248
 
 "In a workers' compensation case, the Industrial Commission is the finder of fact."
 
 Peagler
 
 ,
 
 138 N.C.App. at 601
 
 ,
 
 532 S.E.2d at 212
 
 . It is exclusively within the Commission's province to determine the credibility of the witnesses and the evidence and the weight each is to receive.
 
 Floyd v. First Citizens Bank
 
 ,
 
 132 N.C.App. 527
 
 , 528,
 
 512 S.E.2d 454
 
 , 455 (1999) (citation omitted). "In making these determinations, the Commission may not wholly disregard or ignore the competent evidence before it."
 
 Peagler
 
 ,
 
 138 N.C.App. at 601
 
 ,
 
 532 S.E.2d at 212
 
 (citation omitted).
 

 However, "[t]he Commission is not required ... to find facts as to all credible
 
 *919
 
 evidence" and is "not required to make findings as to every detail of the credible evidence."
 
 London v. Snak Time Catering, Inc.
 
 ,
 
 136 N.C.App. 473
 
 , 476,
 
 525 S.E.2d 203
 
 , 205 (2000) (citation omitted);
 
 Woolard v. N. Carolina Dep't of Transp.
 
 ,
 
 93 N.C.App. 214
 
 , 218,
 
 377 S.E.2d 267
 
 , 269 (1989) (citation omitted). "Instead the Commission must find those facts which are necessary to support its conclusions of law."
 
 London
 
 , 136 N.C.App. at 476,
 
 525 S.E.2d at 205
 
 .
 

 Defendants argue the Commission failed to make proper findings regarding Dr. Murray's and Dr. Jones's testimony. Specifically, Defendants contend the Commission wholly failed to consider testimony from Dr. Murray, and that the Commission's findings regarding Dr. Jones's testimony are in error.
 

 Here, the Commission made no findings directly regarding Dr. Murray's testimony. However, the Commission explicitly stated it received the deposition testimony of Dr. Murray into evidence. Additionally, Finding of Fact Number Eleven discusses Plaintiff's visits with Dr. Murray. As such, the Commission did not "wholly disregard or ignore the competent evidence before it."
 
 Peagler
 
 ,
 
 138 N.C.App. at 601
 
 ,
 
 532 S.E.2d at 212
 
 .
 

 Regarding Dr. Jones's testimony, Defendants incorrectly assert Dr. Jones opined as to the causation issue. However, as explained
 
 supra
 
 , Dr. Jones did not testify regarding causation. As such, the Commission's findings regarding Dr. Jones's testimony were not in error.
 

 Because the Commission did not fail to properly consider the evidence before it, this assignment of error is without merit.
 

 V. Conclusion
 

 For the foregoing reasons, we reverse and remand in part, and affirm in part the Commission's Opinion and Award.
 

 REVERSED AND REMANDED IN PART; AFFIRMED IN PART.
 

 Judges STROUD and DAVIS concur.
 

 [1]
 

 "Curing" a tire is the cooking process for tires. Before a tire enters the pressing machine, it is a "green tire." A press operator removes the green tires from a flatbed and places them on a loader pan, to be placed into a presser, where the tires are cooked. After the tire is pressed, it is considered a cured tire.
 

 [2]
 

 "Off-standard" means Plaintiff did not fully perform all of his job functions and received assistance with performing his job.
 

 [3]
 

 The Opinion and Award did not address why Plaintiff could not physically perform the job tasks. However, Plaintiff testified a wind-up operator must work the crane and bend down to cut plywood with a saw. Due to Plaintiff's back pain, he could not perform these tasks.
 

 [4]
 

 "Non-occupational" means the injury was not related to Plaintiff's job.
 

 [5]
 

 "Paraspinous musculature" is defined as the muscles adjacent to the spinal column. Paraspinal, MERRIAM-WEBSTER, http://www.merriam-webster.com/medical/paraspinal (last visited Nov. 30, 2016).
 

 [6]
 

 There are no findings in the record regarding
 
 why
 
 Employer was unable to accommodate Plaintiff's work restrictions.
 

 [7]
 

 There are no findings in the Opinion and Award regarding why the Commission found Plaintiff failed to show he made a reasonable effort to find suitable employment, or due to preexisting conditions and his work related restrictions, a search would have been futile. The lack of findings is at issue on appeal.
 

 [8]
 

 Although a Form 22 was not required because the Commission denied Plaintiff's request for indemnity compensation, a Form 22 would be necessary if the Commission awards indemnity compensation upon remand.
 

 [9]
 

 Because we hold the Defendants did not rebut the
 
 Parsons
 
 presumption, the burden to prove causation did not shift back to Plaintiff.
 
 Miller
 
 ,
 
 234 N.C.App. at 519
 
 , 760 S.E.2d at 35 ("If the defendant rebuts the
 
 Parsons
 
 presumption, the burden of proof shifts back to the plaintiff.") (citation omitted). As such, we need not address whether Plaintiff proved causation without the
 
 Parsons
 
 presumption, as argued in Defendants' brief.