THERESA A. BUSQUE Employee, Plaintiff v. MID-AMERICA APARTMENT COMMU-
NITIES and/or HERMITAGE @ BEECHTREE, Employers, LIBERTY MUTUAL
INSURANCE COMPANY f/k/a WAUSAU INSURANCE COMPANY and/or
TRAVELERS INSURANCE CO., Carriers, Defendants

No. COA10-540

(Filed 1 March 2011)

**1. Workers' Compensation—reflex sympathetic dystrophy—
chronic region pain syndrome—failure to show aggravation
of pre-existing injury**

The Industrial Commission did not err in a workers' compen-
sation case by finding that plaintiff worker failed to establish that
she has reflex sympathetic dystrophy (RSD)/chronic region pain
syndrome and by determining that the 18 January 2003 fall did
not materially aggravate her pre-existing RSD.

**2. Workers' Compensation—no entitlement to second opi-
nion evaluation and rating—expiration of statute of
limitations**

The Industrial Commission erred in a workers' compensation
case by concluding that plaintiff worker was entitled to a second
opinion evaluation and rating of the percentage of permanent
partial disability of plaintiff's left ankle resulting from a com-
pensable work injury on 18 January 2003. The expiration of time
in the statute of limitations under N.C.G.S. § 97-25.1 barred the
award.

Appeals by plaintiff and defendants from the Opinion and Award
entered 18 December 2009 by the North Carolina Industrial
Commission. Heard in the Court of Appeals 1 December 2010.

*Prather Law Firm, by J.D. Prather, for plaintiff-appellant.*

*Cranfill Sumner & Hartzog LLP, by Jaye E. Bingham and
Jennifer Morris Jones, for defendants-appellants.*

MARTIN, Chief Judge.

On 18 January 2003, after a long history of leg and foot
complaints, plaintiff Theresa Busque suffered an injury to her left leg,
left foot, and right leg in the course and scope of her employment as

a leasing consultant for defendant Mid-America Apartment Communities ("Mid-America"). Defendants covered her medical expenses related to the treatment of this injury through 21 April 2003, when she was released from medical care with no medical restrictions. Four years later, on 18 July 2007, Ms. Busque filed a Form 33, claiming that she had developed Reflex Sympathetic Dystrophy (RSD) and depression because of the 18 January 2003 injury and that she required further medical treatment. By an Opinion and Award entered 10 December 2009, the Full Commission denied her request for compensation, but awarded her a second opinion evaluation at the expense of defendant Mid-America and its insurance carrier defendant Wausau Insurance Company ("Wausau"). Ms. Busque and defendants appeal from the Commission's Opinion and Award.

Ms. Busque's history of foot and leg pain pre-dates the 18 January 2003 injury. In March 1995, Ms. Busque injured her left foot in a "freak accident" when she cut the vein on top of her foot on the exposed iron prongs of a bed frame. This injury caused Ms. Busque to stay out of work and off her feet for approximately nine months.

In 1996, Ms. Busque developed right lower extremity pain because of a misplaced EMG needle. In March 1996, she saw Dr. Marvin Rozear, a board-certified neurologist, complaining of disproportionate pain and some mild discoloration. At his deposition, Dr. Rozear explained that RSD and Chronic Regional Pain Syndrome (CRPS) are diagnosed by the "presence of burning pain [in the extremity involved], color changes ([ranging from paleness or] pallor to beet red or mottled appearance), swelling, changes in hair growth, skin texture[, or] moisture level of skin, changes in nails, changes in bones[,] and allodynia" which is a symptom where a patient experiences intense pain upon slight stimulus. Dr. Rozear, however, did not diagnose Ms. Busque with RSD. Rather, he diagnosed Ms. Busque "with chronic pain in the left foot of unknown etiology." Ms. Busque followed up with Dr. Rozear on 11 April 1998, 14 April 1998, and 1 November 1999. He did not diagnose RSD at any of these appointments.

On 3 September 1998, Ms. Busque began to see Dr. Billy Huh, who is a board-certified physician in anesthesiology and pain medicine. She complained to him of right leg and foot pain, specifically of heel pain which caused her trouble walking and sleeping. She indicated she could only drive for thirty minutes at a time and only work for two hours a day. At this point in time, she had been out of work at least one and a half years due to pain and had changed jobs five times

during the prior two years. Ms. Busque visited Dr. Huh eight more times between 2 November 1998 and 29 July 1999 and, at each visit, complained of pain in her right leg and foot. She never mentioned left side pain. On 29 June 1999, Ms. Busque reported to Dr. Huh that an EMG had induced chronic sciatic pain. Dr. Huh did not diagnose her with RSD at any of these eight appointments; rather, he diagnosed her with plantar fasciitis of the right foot. On 29 June 1999, Dr. Huh also diagnosed her with EMG-induced sciatic neuralgia.

Ms. Busque visited Dr. Huh again on 16 December 1999. At this appointment, she complained of left leg pain and gave her medical history of her 1995 accident and injury to her left foot. Ms. Busque was experiencing some allodynia, swelling, and right-lower- extremity neuropathy. Dr. Huh diagnosed Ms. Busque with RSD of her left lower extremity during this 16 December 1999 visit.

On 1 February 2000, Ms. Busque saw Dr. Mark Easley, an orthopaedic surgeon, complaining of right foot pain. Dr. Easley diagnosed Ms. Busque with atypical plantar fasciitis. On 15 February 2000, Ms. Busque returned to Dr. Huh; she was experiencing worse diffuse tenderness in her right foot than in her left. She had no symptoms of RSD at this visit other than diffuse tenderness. On 28 May 2001, Ms. Busque was seen by Dr. Huh's physician's assistant, Ms. Taylor. After the visit with Ms. Taylor, Ms. Busque did not return to Dr. Huh's office until 16 June 2005.

Ms. Busque began working for defendant Mid-America as a part-time leasing consultant on 10 August 2002. Her duties included answering the telephone, showing apartments, and preparing paper-work for leases. She worked thirty hours or more per week.

On 3 October 2002, Ms. Busque visited Dr. Cara Siegel at Raleigh Orthopaedic Clinic with complaints of swelling, constant pain, numbness, and tingling in her left foot after an alleged work-related injury which she told Dr. Siegel had occurred in February 2002 when she walked into a water meter while working for a previous employer. Ms. Busque informed Dr. Siegel that she had not previously had any problems with her left foot. Dr. Siegel observed no swelling and noted that Ms. Busque's left foot experienced the full range of motion. X-rays revealed no fractures, but Dr. Siegel noted the possibility of degenerative changes in Ms. Busque's foot. Dr. Siegel diagnosed chronic foot pain with mild degenerative changes. On 28 October 2002, Ms. Busque returned to see Dr. Siegel with concerns about venous supply and

**BUSQUE v. MID-AM. APARTMENT COMMUNITIES**

[209 N.C. App. 696 (2011)]

swelling in her leg. Dr. Siegel reiterated that her examination did not show any swelling.

On 18 January 2003, the first injury at issue in this case occurred. Ms. Busque tripped over high carpet, fell on the sharp point of her cane, and injured her left calf and ankle, causing a large knot to appear on her left leg. On 23 January 2003, Ms. Busque filed a Form 18, notifying Mid-America of the fall. In that form, she claimed she "fell walking to my desk—my foot I think turned." On that same day, she went to Doctors' Urgent Care Centre. She complained of left leg pain and a contusion on her right leg. She reported a history of torn ligaments in her left ankle and complained of numbness in her left ankle and toes. The exam revealed that she had full range of motion and no sensory deficit.

Ms. Busque returned to Doctors' Urgent Care Centre on 1 February 2003 for a re-check. She reported that she woke up with left leg pain and was concerned about a blood clot. She was diagnosed with leg strain and instructed to take anti-inflammatory and muscle relaxant medications: Celebrex, Skelaxin, and Flexeril. She was re-checked on 7 February 2003 and 19 February 2003. On 25 February 2005, Ms. Busque called to report that her circulation did not feel right and that her pain was so bad that she needed pain medication, not anti-inflammatory medication. She was referred to Raleigh Orthopaedic Clinic.

Ms. Busque visited the Raleigh Orthopaedic Clinic on 3 March 2003. She filled out a questionnaire in which she reported that she had experienced swelling and throbbing since 20 January 2003. She reported that her whole left leg throbbed, but that she had less pain when she was resting. She reported that she had been seen for a similar problem by a pain clinic at Duke University in 1995. She did not report any aching, numbness, burning, or feeling the sensation of pins and needles or stabbing. Dr. Daniel Albright's physician's assistant, Tom Butler, examined Ms. Busque. She complained to Mr. Butler of left lower extremity pain circumferentially, but she did not inform him that she had pre-existing RSD. His examination did not reveal any signs of bruising, ecchymosis, hyperesthesia, swelling, color change, temperature change, trophic changes, or allodynia in either of her feet or legs. The lack of these symptoms is notable as they are all indicators of RSD and CRPS. Mr. Butler referred her to physical therapy.

Ms. Busque returned to Raleigh Orthopaedic Clinic on 21 April 2003 and saw Dr. Albright. Ms. Busque complained of "vein bulging" and a sensation of vague weakness in her right ankle. She did not report to Dr. Albright that she had a pre-existing diagnosis of RSD. Dr. Albright's examination did not reveal any signs of bruising, ecchymosis, hyperesthesia, swelling, color change, temperature change, trophic changes, or allodynia in either of Ms. Busque's left or right feet or legs. Dr. Alright released Ms. Busque from his care with a diagnosis of left ankle strain, sprain, and contusion. He made no additional treatment recommendations and, noting that Ms. Busque did not suffer any impairment, he returned her to full-duty work with no restrictions. At his deposition, Dr. Albright opined that Ms. Busque did not have RSD when he saw her on 21 April 2003.

Following the 21 April 2003 appointment with Dr. Albright, defendants Mid-America and Wausau did not provide Ms. Busque with any additional medical treatment. Ms. Busque claims that Wausau adjuster John Lapore told her that additional medical treatment would be authorized if she could locate a physician indicating that she needed such treatment. However, Wassau's file regarding Ms. Busque contains no notes indicating that she was told that additional medical treatment would be authorized. On 11 July 2003, John McClanahan, a claims case manager for Wausau, sent Ms. Busque a letter indicating that defendants would not cover any additional medical treatment. On 31 July 2003, Wausau issued the last check for Ms. Busque's 18 January 2003 claim.

Eight months later, on 8 March 2004, Ms. Busque visited Dr. Lawrence Higgins, an orthopedic surgeon at Duke Sports Medicine Clinic. Dr. Higgins diagnosed a muscle contusion in her left leg. Ms. Busque alleges that she then contacted Wausau requesting permission to treat with Dr. Higgins and that her request was denied because she was told it was "too late" to request additional treatment at that point.

On 5 October 2004, Ms. Busque returned to Dr. Higgins complaining of left leg pain. Dr. Higgins indicated that her pain was of unclear etiology. On 20 December 2004, Ms. Busque saw board-certified internist Dr. Joan Jordon in order to establish a primary care relationship. Ms. Busque gave Dr. Jordon a history of RSD.

On or about 15 May 2005, Ms. Busque claims that she re-injured her left foot by walking up steps at work. She claims that after this injury, she developed pain in her left calf and believes she felt a blood vessel break in her ankle. She was examined by Dr. Higgins who did

not see any visible broken blood vessel. She did not report the 15 May 2005 injury to Mid-America, nor did she file a claim with the Industrial Commission.

On 16 June 2005, four years after she had last been seen by Dr. Huh, Ms. Busque returned to see him. His examination revealed worsening left lower extremity pain, mild edema, and allodynia. On 19 August 2005, Dr. Huh diagnosed Ms. Busque with RSD/CRPS. Ms. Busque returned to see Dr. Huh on 4 January 2006, complaining of persistent swelling and tingling in her left foot. She had mild edema of her lower left extremity. At his deposition, Dr. Huh opined that, at the time of the 18 January 2003 fall, Ms. Busque already had pre-existing RSD and that the 18 January 2003 fall had materially aggravated that pre-existing RSD.

In February 2006, Ms. Busque became a marketing specialist for Mid-America. This required her to perform seventy-five marketing calls per week, which involved visiting potential customers and distributing literature. On 8 March 2006, Ms. Busque visited a podiatrist, Dr. Andrew Milner, complaining of right foot pain and walking more than usual with her new position. Dr. Milner diagnosed her with plantar fasciitis in her right foot and wrote her a return-to-work note requiring periods of rest and wearing athletic shoes. She was also prescribed stretches and massage. On 24 March 2006, Dr. Milner modified the note requiring shorter rest periods. At his deposition, Dr. Milner opined that plantar fasciitis is "very common" and is an "ordinary disease of life." Dr. Milner also testified that a patient's activity level is only one of several factors that can contribute to plantar fasciitis.

On 15 May 2006, Ms. Busque visited Dr. Jordon. She complained of some depression, anxiety, insomnia, and worry over being evicted from her apartment. She gave her a history of a May 2005 left foot injury which occurred while climbing stairs and a February 2006 injury which occurred while conducting marketing visits at businesses. She also gave a history of RSD and informed Dr. Jordon about the 1995 "freak" accident. She did not mention the 18 January 2003 injury. Dr. Jordon prescribed Xanax, referred Ms. Busque to a psychiatrist, and recommended follow up at a pain clinic. Ms. Busque again visited Dr. Jordon on 8 June 2006, complaining of a migraine. She was given medication and again referred for a psychiatric appointment. Dr. Jordon did not observe any of the objective hallmark symptoms that often accompany RSD. She has no opinion regarding a causative link between Ms. Busque's allegations of worsening pain after her January 2003 injury and her anxiety.

Ms. Busque visited Dr. Huh again on 13 September 2006, complaining that her pain had spread to her left hand. Dr. Huh felt that Ms. Busque had CRPS in her left foot which had spread to her left hand. Ms. Busque returned to Dr. Huh on 26 March 2007 and 16 May 2007. She was prescribed physical therapy and medication; however, she reported that she could not tolerate the prescribed medications and so discontinued taking them. Her pain continued. Dr. Huh opined that conservative treatment is often not effective in RSD patients and that the drugs used for conservative treatment have unpleasant side effects.

At his deposition, Dr. Huh explained that RSD is "basically a pain coming from the nerve," which can be thought of as a "short-circuited" "electrical wire" misfiring and causing "spontaneous pain." He further explained that he diagnosed Ms. Busque with RSD based on her history and his examination, but without objective tests such as X-rays, bone scans, or MRIs, as those tests cause more pain for RSD patients. He explained that in Ms. Busque's case, he documented allodynia (where a patient is unusually sensitive to a light touch) based on her subjective reporting of her response. He also documented swelling; however, he failed to note and was unable to recall at his deposition whether that swelling was mild, moderate, or severe.

In May 2007, Dr. Huh recommended that Ms. Busque might benefit from a surgically implanted spinal cord stimulator which he felt was "highly effective" in treating "th[at] type of pain." He recommended that she have a one week trial of this treatment and then, if she reported a 50% or more improvement in her pain relief, she would be a candidate for a permanent device.

Ms. Busque returned to see Dr. Milner on 18 June 2007. Dr. Milner noted that Ms. Busque did not exhibit symptoms of RSD. Instead, Dr. Milner diagnosed Ms. Busque with chronic plantar fasciitis and prescribed that she wear "New Balance" athletic shoes.

That same day, on 18 July 2007, Ms. Busque submitted a Form 33 request that her claim be assigned for a hearing, alleging that she had developed "RSD and other health conditions as a result of the accident and [that she] requires additional medical treatment." Specifically, Ms. Busque claims that the plantar fasciitis reoccurrence diagnosed by Dr. Milner on 8 March 2006 was caused by "excessive walking over the course of several days" as was required by her February 2006 change in position at Mid-America. She furthermore alleged that this aggravated her RSD and contributed to her depression.

Ms. Busque's claim for further medical treatment arising out of the 18 January 2003 accident (Industrial Commission File No. 570691) and her claim for her plantar fasciitis reoccurrence diagnosed on 8 March 2006 (Industrial Commission File No. 615291) were consolidated for a hearing before the Industrial Commission on 31 July 2007. Defendants filed a Form 33R Response on 23 October 2007 and an amended Form 33R on 20 December 2007, denying Ms. Busque's claims, disputing the nature and extent of her injuries, contending that her alleged RSD is not a consequence of the 18 January 2003 injury, and asserting that her claim is barred by the statute of limitations and other statutory bars.

A hearing was held before Chief Deputy Commissioner Wanda Blanche Taylor on 5 June 2008. Ms. Busque testified extensively. Additionally, Wausau team manager Courtney Daniel Barnes testified concerning Wausau's policy to document completely all conversations between Wausau's employees and claimants. Linda Edwards and Phillip Boatwright, both property managers at Mid-America who supervised Ms. Busque, as well as Jackie Melnick, Mid-America's regional director, testified about Ms. Busque's job responsibilities at Mid-America and the accommodations that Ms. Busque received at the recommendation of Dr. Milner.

Additionally, the Commission considered a number of depositions. Among those were several of the doctors who had seen Ms. Busque as well as Dr. Michael Kerzner, a board-certified podiatrist who conducted a review of Ms. Busque's medical records. Dr. Kerzner opined that Ms. Busque does not have RSD. Furthermore, he opined that, based on medical records, her job description, the hours worked, and the level of required activity, Ms. Busque's suspected plantar fasciitis is not directly related to her job.

On 29 April 2009, Deputy Commissioner Taylor filed an Opinion and Award denying Ms. Busque's claims for additional benefits for her 18 January 2003 injury and for her recurrence of plantar fasciitis on or about 8 March 2006 and awarding Ms. Busque a second opinion evaluating her "left ankle strain/sprain/contusion" from the 18 January 2003 fall.

All parties appealed to the Full Industrial Commission. In an Opinion and Award dated 10 December 2009, the Commission confirmed the conclusions of Deputy Commissioner Taylor denying Ms. Busque's claim for additional benefits for her 18 January 2003 injury and for her alleged reoccurrence of her plantar fasciitis on or around

8 March 2006. The Commission found, given the fact that Dr. Huh was the only doctor of the many that Ms. Busque visited who diagnosed her with RSD/CRPS, that his opinion that Ms. Busque has RSD and that it was causally related to the 18 January 2003 injury warranted little weight. The Commission concluded that Ms. Busque had failed to establish by the greater weight of the evidence that she had RSD/CRPS. It also concluded that the compensable 18 January 2003 fall had resulted only in a left ankle strain/sprain/contusion, caused Ms. Busque to miss no days of work, and required no medical treatment after her release from Dr. Albright on 21 April 2003. Furthermore, the Commission concluded that Ms. Busque's pre-existing plantar fasciitis was not aggravated by her job. The Commission concluded that Ms. Busque's anxiety and depression were not caused by or significantly contributed to by her 18 January 2003 left ankle strain/sprain/contusion.

The Commission also ordered that defendants provide a second opinion evaluation and rating of the percentage of permanent partial disability of plaintiff's left ankle resulting from the 18 January 2003 incident. Finally, the Commission ordered that defendants pay the costs of the proceedings.

I.

Plaintiff's Appeal

[1] Ms. Busque argues the Commission erred by finding that she failed to establish that she has RSD/CRPS and by not determining that the 18 January 2003 fall materially aggravated her pre-existing RSD. Ms. Busque alleges that as a result the Commission erred in denying her claim for additional medical compensation. We disagree. The Commission made numerous findings of fact, which were amply supported by the record, regarding a lack of evidence supporting the conclusion that Ms. Busque did not have RSD.

An appellate court's review of an Opinion and Award of the North Carolina Industrial Commission is limited to a determination of whether there was any competent evidence before the Commission to support its findings of fact and whether those findings support the Commission's conclusions of law. *E.g., Faison v. Allen Canning Co.,* 163 N.C. App. 755, 757, 594 S.E.2d 446, 448 (2004). If supported by competent evidence, the Commission's findings are conclusive even though evidence might also support contrary findings. *E.g., Jones v. Chandler Mobile Village,* 118 N.C. App. 719, 721, 457 S.E.2d 315, 317

(1995) ("The Commission's findings of fact may be set aside on appeal only when there is a complete lack of competent evidence to support them.").

The Commission made numerous findings of fact, including that: Dr. Rozear had not diagnosed Ms. Busque with RSD when he saw her in 1998; she did not exhibit symptoms of RSD when she was examined by Mr. Butler and Dr. Albright at Raleigh Orthopedic Clinic in 2003; Dr. Jordon did not observe any objective hallmarks that usually accompany RSD in May and June of 2006; Dr. Milner did not observe any objective symptoms of RSD when he examined Ms. Busque in 2007, and opined that, while she suffered from chronic plantar fasciitis, her employment was not a significant contributing factor; and Dr. Kerzner reviewed Ms. Busque's medical records and was of the opinion that she did not have RSD and that her suspected plantar fasciitis is a common, ordinary disease of life and was not directly related to her employment. The Commission also found:

> 49. None of the numerous doctors consulted by plaintiff, with the exception of Dr. Huh, have diagnosed plaintiff with RSD/CRPS. Dr. Huh, although he diagnosed plaintiff with RSD/CRPS, did not observe any of the hallmark conditions which are found with RSD/CRPS except mild intermittent swelling and allodynia.

We find plenary evidence to support the Commission's findings, in the testimony of each of the physicians who examined Ms. Busque, and in the testimony of Dr. Kerzner, who has treated numerous RSD cases and lectured extensively on RSD and reviewed all of Ms. Busque's medical records and her job description.

Ms. Busque appears to argue, however, that the Commission should have only given credence to Dr. Huh's opinion as to whether or not she had RSD. In advancing this argument, however, Ms. Busque appears to misapprehend our standard of review. This Court's " 'duty goes no further than to determine whether the record contains any evidence tending to support the finding.' " *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)). Additionally, the Commission is entitled to assign more weight and credibility to the testimony of some witnesses as it sees fit. *Dolbow v. Holland Indus.*, 64 N.C. App. 695, 697, 308 S.E.2d 335, 336 (1983). Moreover, contrary to Ms. Busque's assertion that the Commission further erred when it made no finding as to whether her RSD was aggravated by her 18 January 2003 fall, it would have been nonsensical

for the Commission to make such a specific finding with respect to a condition from which it had already concluded she did not suffer.

We hold the Commission's findings fully support its conclusion of law that:

> 2. Plaintiff failed to prove by the greater weight of the evidence that she has CRPS/RSD.

Consequently, we affirm the Commission's denial of additional benefits related to her 18 January 2003 compensable injury.

II.

Defendants' Appeal

[2] In their appeal, defendants challenge the Commission's conclusion of law and subsequent award entitling Ms. Busque to "a second opinion evaluation and rating of the percentage of permanent partial disability of plaintiff's left ankle resulting from the compensable strain/sprain/contusion on January 18, 2003. "Defendants argue the award is not supported by the Commission's findings of fact or by the law. They also argue that Ms. Busque's claim is barred by both the two year statue of limitations and by laches. Ms. Busque contends that neither the statute of limitations nor laches bars the award entitling her to a second opinion. Furthermore, she argues that defendants should be equitably estopped from asserting any applicable time limitations. We agree with defendants that the statute of limitations bars the award of a second opinion to Ms. Busque.

Conclusions of law are reviewed *de novo*. *E.g., Ramsey v. S. Indus. Constructors Inc.*, 178 N.C. App. 25, 30, 630 S.E.2d 681, 685, *disc. review denied*, 361 N.C. 168, 639 S.E.2d 652 (2006). N.C. G.S. § 97-25.1 (2009) details this two year statute of limitations and plainly bars Ms. Busque's further recovery. The statute states:

> The right to medical compensation shall terminate two years after the employer's last payment of medical or indemnity compensation unless, prior to the expiration of this period, either: (i) the employee files with the Commission an application for additional medical compensation which is thereafter approved by the Commission, or (ii) the Commission on its own motion orders additional medical compensation. If the Commission determines that there is a substantial risk of the

necessity of future medical compensation, the Commission shall provide by order for payment of future necessary medical compensation.

N.C. Gen. Stat. § 97-25.1 (2009). Applying the statute to the present case, the "last payment of medical or indemnity compensation" for the 18 January 2003 fall was a check issued to Ms. Busque dated 31 July 2003. Ms. Busque's application for additional medical compensation was not filed until 18 July 2007—more than two years beyond 31 July 2003. Thus, Ms. Busque's right to medical compensation for that injury has terminated.

Ms. Busque challenges this straight-forward reading of N.C.G.S. § 97-25.1. She argues that the term "last payment of . . . compensation" can only refer to a "final award." She argues that there is a distinction between her claim and other claims where the statute of limitation properly bars recovery because she claims that she faced continuing denial of compensability. We disagree. In fact, we note that there was no "continuing denial" as Ms. Busque filed her only request for coverage on 18 July 2007—more than two years after she received the 11 July 2003 letter from defendant Wausau's claims adjuster, Mr. McClanahan, informing her that defendants would not authorize any additional medical treatment and the 31 July 2003 check from defendants. During that time period, Ms. Busque did not make *any* filing with the Industrial Commission requesting additional benefits.

Ms. Busque also tries to overcome the statute of limitations bar by arguing that defendants are equitably estopped from asserting the statute of limitations defense. She bases this argument upon her contention that she was advised by a representative of defendants that she would be provided additional medical treatment for her injury should she locate a physician indicating that she needed it. The Commission, however, found that no one at Wausau told plaintiff that additional medical treatment beyond her 21 April 2003 appointment with Dr. Albright would be authorized. This finding is supported by Wausau's "Claim Notes," which do not indicate that anyone at Wausau told Ms. Busque that additional medical treatment beyond the 21 April 2003 appointment with Dr. Albright would be authorized and the testimony about Wausau's policy of thoroughly documenting all conversations with claimants.

Because we hold that the Commission improperly ordered that Ms. Busque was entitled to a second opinion, we reverse that portion of the Order.

Plaintiff's Appeal—Affirmed.

Defendants' Appeal—Reversed.

Judges McGEE and ERVIN concur.