ZACHARY
 
 ,
 
 Judge
 
 .
 

 Plaintiff-employee Capen Trucer Carl Anders, II (Anders) appeals from an Opinion and Award of the Industrial Commission denying his claims for additional medical and indemnity benefits related to bilateral hernias allegedly caused by an earlier, compensable hernia injury that plaintiff suffered while employed by defendant-employer Universal Leaf North America (Universal Leaf). Anders' primary argument on appeal is that the Commission erred in concluding that the subsequent bilateral hernias that Anders suffered after Universal Leaf terminated his employment were not causally related to his prior compensable hernia injury. Anders also challenges the Commission's conclusion that his claim for additional medical treatment related to the subsequent bilateral hernias was time-barred by
 
 N.C. Gen. Stat. § 97-25.1
 
 . For the reasons that follow, although the Commission committed an error in its causation analysis, we conclude that no remand is necessary in this case, and that the Commission's Opinion and Award should be affirmed.
 

 I. Background
 

 This case arises out of an admittedly compensable bilateral inguinal hernia injury that Anders suffered while employed as a seasonal employee by Universal Leaf. At the time of the work-related accident, which occurred on 20 November 2010, Anders was working on the "blending line" removing wires from bales of tobacco. After a tobacco-bale wire became stuck, Anders "yanked on the wire and felt a pain in his groin." On 22 November 2010, Universal Leaf sent Anders to Carolina Quick Care, where he was diagnosed with an inguinal hernia and referred to a surgeon. However, defendants refused to authorize a surgeon's visit at that time. Anders worked under light-duty restrictions for several days.
 

 On 28 November 2010, Anders sought treatment for his hernia in the emergency department at Halifax Regional Medical Center, where he was again diagnosed with an inguinal hernia and referred to a surgeon. When Anders returned to work on 29 November 2010, he learned that he had been fired for violating Universal Leaf's attendance policy. The record reveals that a specific absentee policy applied to Anders' position and that Universal Leaf had an established process for handling workers' compensation claims. According to Universal Leaf's absentee policy, a seasonal worker could be terminated for accruing six "occurrences" - i.e., "a day out of work, an early leave, or a late entry into work" - in a twelve-month period. Anders had accumulated at least six occurrences between 17 September 2010 and 29 October 2010. When Anders sought medical treatment on 28 November 2010, his absence from work counted as an occurrence because
 
 *103
 
 Anders did not contact Universal Leaf's first aid office and receive authorization for the hospital visit.
 

 Shortly after Universal Leaf terminated Anders, he found work at a local Waffle House. On 22 March 2011, Dr. Robert Vire performed a bilateral inguinal repair surgery on Anders. That same day, Anders was discharged from the hospital with the temporary restriction that he not lift more than 10 pounds. Although Anders returned to Dr. Vire on 7 April 2011 with "soreness" at the incision site, Dr. Vire found no evidence of any hernia. Dr. Vire released Anders to full-duty work and instructed him to report for further treatment as needed. Anders then returned to his position at Waffle House.
 

 In late May 2011, Anders experienced ongoing pain in his right groin and he returned to Dr. Vire, who ordered that Anders undergo an ultrasound and CT scan of the abdomen, pelvis, and chest. The ultrasound was performed on 8 June 2011 and Anders underwent CT scans on 20 June 2011 and 7 July 2011. Dr. Vire found no evidence of a recurring hernia, but the ultrasound revealed that Anders suffered from a "small right hydrocele with superficial edema around the right scrotum." It does not appear that the CT scans revealed any further concerns.
 

 Anders' original claim for workers' compensation benefits related to the work-related hernia was accepted by defendants' filing a Form 60 on 13 May 2011. That same day, defendants also filed a Form 28 Return to Work report, which indicated that Anders was released to work on 15 April 2011,
 
 [1]
 
 and a Form 28B, which reported that Anders had received medical compensation and 2.2 weeks of temporary total disability benefits for the period from 29 March 2011 until 14 April 2011. The Form 28B established that Anders received his last disability payment on 8 April 2011. Anders received his last medical compensation payment on 19 January 2012; that payment covered the ultrasound and the CT scans ordered by Dr. Vire.
 

 Based on the results from the June 2011 ultrasound, Dr. Vire referred Anders to Dr. Fred Williams, a surgeon at ECU Physicians. Dr. Williams examined Anders on 11 August 2011 and found no recurrent hernias, but Dr. Williams did "appreciate[ ] a small hydrocele, with tenderness in the ... ilioinguinal nerve." As a result, Anders was prescribed the medication Neurontin for nerve pain. Anders began working for Hardee's in August 2011.
 

 When Anders sought treatment for bilateral groin pain in May 2013, he was referred to general surgeon Dr. James Ketoff, who diagnosed a small, recurrent right inguinal hernia. Dr. Ketoff surgically repaired this hernia on 6 June 2013, and he ordered Anders out work until 9 July 2013. Between July 2013 and August 2014, Anders sporadically sought medical treatment for groin pain.
 

 On 27 January 2014, Anders initiated the present action by filing a Form 33 request for hearing, seeking medical and indemnity compensation for his recurring hernias. Following defendants' Form 33R response, which asserted that Anders had received all benefits to which he was entitled, the matter was heard before Deputy Commissioner Theresa Stephenson on 10 September 2014. On 9 April 2015, Deputy Commissioner Stephenson filed an Opinion and Award that,
 
 inter alia,
 
 concluded that Anders' subsequent recurring hernias were not related to his November 2010 work-related injury, awarded certain indemnity compensation to Anders, and denied other indemnity compensation and any medical compensation.
 

 Anders reported to Dr. Ketoff, who diagnosed a left-sided, recurrent hernia on 21 August 2014. Dr. Ketoff surgically repaired Anders' left-sided hernia on 24 September 2014. Dr. Ketoff ordered Anders out of work from the date of the surgery until 9 December 2014, when Anders was released to work and instructed to ease into full activity.
 

 Anders appealed Deputy Commissioner Stephenson's decision to the Full Commission. After hearing the matter in September 2015, the Commission entered an Opinion and Award on 5 July 2016 and found,
 
 inter
 

 *104
 

 alia,
 
 that Anders' work-related hernia had "fully healed" after it was repaired on 22 March 2011; that defendants' last payments of indemnity and medical payments occurred on 8 April 2011 and 19 January 2012, respectively; that Anders did not request additional medical compensation until 27 January 2014; that Anders had not suffered any permanent damage to any organs or body parts as a result of the work-related injury; and that Anders failed to produce evidence of his earnings from the work he performed after Universal Leaf terminated him, which included positions at Waffle House, Hardee's, and landscaping and construction work.
 

 Based on these findings, the Commission concluded that Anders had failed to prove that his November 2010 work-related injury was causally related to his subsequent recurring hernias, and that Anders' request for additional medical compensation was time-barred by
 
 N.C. Gen. Stat. § 97-25.1
 
 . Because Anders had failed to prove that he was "disabled" as defined by the Workers' Compensation Act during the period following his termination, the Commission further concluded that Anders was not entitled to additional indemnity compensation for his subsequent recurrent hernias. Consequently, Anders' claims for additional compensation were denied. Anders now appeals the Commission's Opinion and Award.
 

 II. Standard of Review
 

 "Appellate review of an award from the Industrial Commission is generally limited to two issues: (1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are justified by the findings of fact."
 
 Clark v. Wal-Mart,
 

 360 N.C. 41
 
 , 43,
 
 619 S.E.2d 491
 
 , 492 (2005). The "`Commission is the sole judge of the credibility of the witnesses and the [evidentiary] weight to be given their testimony.'"
 
 Adams v. AVX Corp.,
 

 349 N.C. 676
 
 , 680,
 
 509 S.E.2d 411
 
 , 413 (1998) (quoting
 
 Anderson v. Lincoln Constr. Co.,
 

 265 N.C. 431
 
 , 433-34,
 
 144 S.E.2d 272
 
 , 274 (1965)). "Thus, if the totality of the evidence, viewed in the light most favorable to the complainant, tends directly or by reasonable inference to support the Commission's findings, these findings are conclusive on appeal even though there may be plenary evidence to support findings to the contrary."
 
 Click v. Pilot Freight Carriers, Inc.,
 

 300 N.C. 164
 
 , 166,
 
 265 S.E.2d 389
 
 , 390 (1980). The Commission's conclusions of law are subject to
 
 de novo
 
 review.
 
 Boney v. Winn Dixie, Inc.,
 

 163 N.C. App. 330
 
 , 331,
 
 593 S.E.2d 93
 
 , 95 (2004).
 

 III. Discussion
 

 On appeal, Anders' primary argument is that the Commission improperly decided the causation issue. Anders contends that the Commission erred in determining that his subsequent bilateral hernias were not compensable as natural and direct results of the earlier compensable bilateral hernia he suffered while employed by Universal Leaf. However, the Commission's Opinion and Award also contains conclusions of law that present separate and distinct bars - which are unaffected by the causation issue - to Anders' claims for additional medical and indemnity benefits. Accordingly, we begin by addressing the Commission's conclusions that Anders' claim for medical benefits was time-barred, and that his claim for indemnity benefits should be denied because he failed to prove that he was "disabled" as defined by the Workers' Compensation Act during the period following his termination from employment by Universal Leaf.
 

 A.
 
 Overview
 

 In 1929, the legislature created our Workers' Compensation Act, "[t]he underlying purpose of [which] is to provide compensation for work[ers] who suffer disability by accident arising out of and in the course of their employment."
 
 Henry v. A.C. Lawrence Leather Co.,
 

 234 N.C. 126
 
 , 127,
 
 66 S.E.2d 693
 
 , 694 (1951). As the plan is designed, "[a]n award under the Act has two distinct components: (1) payment of `
 
 medical compensation
 
 ' pursuant to G.S. § 97-25 for expenses incurred as a direct result of the work-related injury, and (2) payment of
 
 general
 
 `
 
 compensation
 
 ' pursuant to G.S. §§ 97-29 through 97-31 for financial loss suffered as a direct result of the work-related injury."
 
 Collins v. Speedway Motor Sports Corp.,
 

 165 N.C. App. 113
 
 , 118,
 
 598 S.E.2d 185
 
 , 189 (2004) (emphasis added and citations omitted);
 
 see Cash v.
 

 *105
 

 Lincare Holdings,
 

 181 N.C. App. 259
 
 , 264,
 
 639 S.E.2d 9
 
 , 14 (2007) (recognizing that "the legislature always has provided for, and continues to provide for, [these] two distinct components of an award under the Workers' Compensation Act") (citation and internal quotation marks omitted).
 

 The term medical compensation is defined as
 

 medical, surgical, hospital, nursing, and rehabilitative services, including, but not limited to, attendant care services prescribed by a health care provider authorized by the employer or subsequently by the Commission, vocational rehabilitation, and medicines, sick travel, and other treatment, including medical and surgical supplies, as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability; and any original artificial members as may reasonably be necessary at the end of the healing period and the replacement of such artificial members when reasonably necessitated by ordinary use or medical circumstances.
 

 N.C. Gen. Stat. § 97-2
 
 (19) (2015). In contrast, indemnity benefits (general compensation) may be awarded to address "financial loss other than medical expenses."
 
 Hyler v. GTE Prod. Co.,
 

 333 N.C. 258
 
 , 267,
 
 425 S.E.2d 698
 
 , 704 (1993),
 
 superseded in part on other grounds by statute as recognized by Lunsford v. Mills,
 

 367 N.C. 618
 
 , 623,
 
 766 S.E.2d 297
 
 , 301 (2014). Because "the Commission's determination that an employer must pay an injured employee medical compensation pursuant to N.C.G.S. § 97-25 is a separate determination from whether an employer owes [general] compensation as a result of an employee's disability[,] ... [n]either determination is a necessary prerequisite for the other."
 
 Cash,
 

 181 N.C.App. at 264
 
 ,
 
 639 S.E.2d at 14
 
 .
 

 With this statutory scheme in mind, we turn to Anders' claim for additional medical compensation.
 

 B.
 
 Limitations Period on Anders' Claim for Medical Compensation
 

 As noted above, the Commission concluded that Anders' claim for additional medical compensation for treatment related to his subsequent recurrent hernias was time-barred pursuant to the provisions of
 
 N.C. Gen. Stat. § 97-25.1
 
 . The Commission's conclusion cited to this Court's decisions in
 
 Busque v. Mid-Am. Apartment Communities,
 

 209 N.C. App. 696
 
 ,
 
 707 S.E.2d 692
 
 (2011) and
 
 Harrison v. Gemma Power Systems, LLC,
 

 234 N.C. App. 664
 
 ,
 
 763 S.E.2d 17
 
 ,
 
 2014 WL 2993853
 
 (2014) (unpublished), and was based on the following findings:
 

 15. A Form 28B,
 
 Report of Employer or Carrier/Administrator of Compensation and Medical Compensation Paid and Notice of Right to Additional Medical Compensation,
 
 was filed by Defendants on May 16, 2011, reflecting indemnity compensation payments from March 29, 2011 through April 14, 2011, with the last compensation check forwarded on April 8, 2011.
 

 16. The Form 28B further reflected that the last payment of medical compensation was paid on May 5, 2011. However, Defendants' claims payment history reflects that the actual last payment by Defendants of medical compensation was made on January 19, 2012, for the ultrasound and CT scans performed in June and July 2011....
 

 19. ... [T]he last payment of medical compensation made by Defendants was January 19, 2012.
 

 20. Plaintiff did not seek any medical treatment from March 15, 2012 until May 18, 2013. There is no evidence Plaintiff sought authorization for medical treatment from Defendants during this time period. Plaintiff did not file a request to the Commission for additional medical compensation until January 27, 2014, when he filed a Form 33,
 
 Request that Claim be Assigned for Hearing.
 
 This request was made more than two years following the last payment of indemnity and medical compensation.
 

 Section 97-25.1 imposes a limitation period upon an injured employee's right to seek medical compensation:
 

 The right to medical compensation shall terminate two years after the employer's
 
 *106
 
 last payment of medical or indemnity compensation unless, prior to the expiration of this period, either: (i) the employee files with the Commission an application for additional medical compensation which is thereafter approved by the Commission, or (ii) the Commission on its own motion orders additional medical compensation.
 

 In
 
 Busque,
 
 this Court applied section 97-25.1 in a "straight-forward" manner, holding that the plaintiff's right to medical compensation for an ankle injury was barred because her 2007 application for additional medical treatment was filed more than two years after the defendants' last payment of medical compensation in 2003.
 
 209 N.C.App. at 707
 
 ,
 
 707 S.E.2d at 700
 
 .
 

 Here, the Commission's unchallenged findings establish that Anders' 27 January 2014 request for additional medical compensation was filed more than two years after defendants' last payments of indemnity and medical compensation, which occurred, respectively, on 8 April 2011 and 19 January 2012. Accordingly, the Commission properly concluded that section 97-25.1 stands as a bar to plaintiff's claims for additional medical treatment.
 

 Nevertheless, Anders argues that if the "Commission [had] properly considered the evidence and the law controlling that evidence, there would have been, at minimum, an indemnity award for [the period during which defendant was allegedly disabled], which would in turn render defendants' [section] 97-25.1 defense inapplicable as the indemnity benefits would restart the clock on said statute's limitations period." This argument utilizes the notion of a "hypothetical" indemnity award to prevent section 97-25.1 from barring Anders' claim for additional medical treatment. However, this Court recently rejected a similar contention in
 
 Harrison.
 

 The
 
 Harrison
 
 Court relied on
 
 Busque
 
 and held that "because the last payment of medical compensation made by [the d]efendant was more than two years prior to [the p]laintiff's current Form 33 filing, ... [the p]laintiff's right to additional medical compensation [was] time-barred pursuant to
 
 N.C. Gen. Stat. § 97-25.1
 
 ."
 
 Harrison,
 

 2014 WL 2993853
 
 , at *4. Even so, the
 
 Harrison
 
 Court addressed the plaintiff's argument that that "`the last payment of compensation in the claim has not yet taken place' because `[the p]laintiff is still owed payment for temporary total disability and/or permanent partial impairment.'"
 

 Id.
 

 "Stated differently," the Court explained, "[the p]laintiff argues that the two-year statute of limitations period found in
 
 N.C. Gen. Stat. § 97-25.1
 
 has not yet begun and will not begin until [the p]laintiff receives a payment from [the d]efendant for indemnity benefits."
 

 Id.
 

 In rejecting this argument, the Court explained:
 

 First, [the p]laintiff's argument ignores the plain language of the statute. "The right to medical compensation shall terminate two years after the employer's
 
 last
 
 payment of medical or indemnity compensation...."
 
 N.C. Gen. Stat. § 97-25.1
 
 (emphasis added). In context, the word "last" does not refer to a
 
 hypothetical future payment
 
 that [the p]laintiff may be entitled to receive after presenting a claim to the Industrial Commission. On its face, the "last" payment refers to the most recent payment of medical or indemnity benefits that has actually been paid. Second, [the p]laintiff's argument assumes the certainty of a future indemnity payment before the right to such payment has been decided by the Industrial Commission. Third, accepting Plaintiff's interpretation of the statute would allow claimants seeking additional medical compensation to obviate the statute of limitations in any case by asserting a valid claim for indemnity benefits alongside a claim for additional medical compensation. Such an expansive interpretation ignores the clear intent of our legislature to limit claims for additional medical compensation to a specified time period.
 

 Id.
 

 (emphasis added). Although clearly not controlling, we find
 
 Harrison
 
 's reasoning persuasive and apply it to the instant case.
 

 Harrison
 
 makes it clear that the "last" payments referred to in section 97-25.1 denote the most recent, "actual" payments of medical or indemnity benefits, not hypothetical payments the Commission
 
 might
 
 award in the future.
 
 Harrison,
 

 2014 WL 2993853
 
 , at *4. At the time when the Commission issued
 
 *107
 
 its Opinion and Award in the present case, the last
 
 actual
 
 payment of indemnity compensation was made on 8 April 2011. Anders received his last
 
 actual
 
 payment of medical compensation on 19 January 2012. Consequently, defendants had not made any indemnity or medical payments within two years of Anders' request for additional medical compensation, which occurred when Anders filed the Form 33 on 27 January 2014. The evidence, therefore, supports the Commission's findings and the findings support the Commission's conclusion that section 97-25.1 bars Anders' request for additional medical compensation.
 

 C.
 
 Indemnity Compensation
 

 Separate from Anders' claim for medical compensation is his claim for indemnity benefits for periods of disability allegedly caused by his original, compensable hernia injury. "An employee seeking indemnity benefits pursuant to the Workers' Compensation Act has, at the outset, two very general options."
 
 Knight v. Wal-Mart Stores, Inc.,
 

 149 N.C. App. 1
 
 , 10,
 
 562 S.E.2d 434
 
 , 441 (2002),
 
 aff'd,
 

 357 N.C. 44
 
 ,
 
 577 S.E.2d 620
 
 (2003). First, an injured employee may seek indemnity benefits by showing either a total disability pursuant to
 
 N.C. Gen. Stat. § 97-29
 
 (2015) or a partial disability pursuant to
 
 N.C. Gen. Stat. § 97-30
 
 (2015). "[D]isability is defined by a diminished capacity to earn wages, not by physical infirmity."
 
 Saums v. Raleigh Community Hospital,
 

 346 N.C. 760
 
 , 764,
 
 487 S.E.2d 746
 
 , 750 (1997);
 
 N.C. Gen. Stat. § 97-2
 
 (9) (2015) ("The term `disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment."). "The second option available to an employee seeking indemnity benefits is to show that the employee has a specific physical impairment that falls under the schedule set forth in
 
 N.C. Gen. Stat. § 97-31
 
 [(2015)], regardless of whether the employee has, in fact, suffered" a partial or total disability.
 
 Knight,
 

 149 N.C.App. at 11
 
 ,
 
 562 S.E.2d at 442
 
 .
 
 [2]
 
 Particularly relevant here, an employee is entitled to compensation under
 
 N.C. Gen. Stat. § 97-31
 
 (24) if "he [produces] ... medical evidence that he has loss of or permanent injury to an important external or internal organ or part of his body for which no compensation is payable under any other subdivision of [N.C. Gen. Stat. §] 97-31."
 
 Porterfield v. RPC Corp.,
 

 47 N.C. App. 140
 
 , 142-43,
 
 266 S.E.2d 760
 
 , 762 (1980).
 

 1.
 

 Disability Benefits Pursuant to
 
 N.C. Gen. Stat. §§ 97-29
 
 and 30
 

 As to Anders' right to total and temporary disability benefits under sections 97-29 and 97-30 following his termination, Universal Leaf was required to demonstrate initially that: (1) Anders was terminated for misconduct or other fault; (2) a nondisabled employee would have been terminated for the same misconduct or fault; and (3) the termination was unrelated to Anders' compensable injury.
 
 Seagraves v. Austin Co. of Greensboro,
 

 123 N.C. App. 228
 
 , 234,
 
 472 S.E.2d 397
 
 , 401 (1996).
 

 The Commission addressed the circumstances of Anders' termination in the following unchallenged findings of fact:
 

 6. When Plaintiff began working for Defendant-Employer in 2010, he was provided an employee handbook and underwent an orientation process. Plaintiff was instructed on how workers' compensation claims would be handled and was instructed on the absentee policy for seasonal employees. Plaintiff was aware of the absentee policy and that, as a seasonal employee, he could be terminated if he accrued six occurrences within a 12-month period.
 

 7. From September 17, 2010 through October 29, 2010, Plaintiff had missed six work shifts. For three of those shifts, Plaintiff failed to report to work or notify the employer. Plaintiff missed one shift for personal business and the remaining shifts were missed due to illness and occurred prior to his November 20, 2010 incident.
 

 *108
 
 Plaintiff received warnings from his supervisor as he accumulated occurrences.
 

 . . .
 

 34. Based upon a preponderance of the competent, credible evidence, Defendant terminated Plaintiff for misconduct and the reason for Plaintiff's termination was a reason for which a non-disabled employee would be terminated. While Plaintiff's last absence which led to his termination was due to medical treatment he sought for his hernia condition, Plaintiff did not obtain proper authorization for his absence, despite knowledge of the attendance policy, knowledge of the proper procedure for requesting medical treatment and time off for his work-related injury, and knowledge that he had accumulated occurrences and was on warning for his excessive absences.
 

 These unchallenged findings support the Commission's conclusion that defendants met their initial burden of showing that the first three elements of the
 
 Seagraves
 
 test were satisfied.
 

 "An employer's successful demonstration of ... evidence [that satisfies the initial part of the
 
 Seagraves
 
 test] is `deemed to constitute a constructive refusal' by the employee to perform suitable work, a circumstance that would bar benefits for lost earnings, `
 
 unless
 
 the employee is then able to show that his or her inability to find or hold other employment ... at a wage comparable to that earned prior to the injury[ ] is due to the work-related disability.'"
 
 McRae v. Toastmaster, Inc.,
 

 358 N.C. 488
 
 , 493-94,
 
 597 S.E.2d 695
 
 , 699 (2004) (quoting
 
 Seagraves,
 

 123 N.C.App. at 234
 
 ,
 
 472 S.E.2d at 401
 
 ). In other words, "the burden shift[ed] to [Anders] to re-establish that he suffer[ed] from a disability" during the time periods in question.
 
 Williams v. Pee Dee Electric Membership Corp.,
 

 130 N.C. App. 298
 
 , 303,
 
 502 S.E.2d 645
 
 , 648 (1998). An employee must prove all three of the following factual elements in order to support a conclusion of disability:
 

 (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.
 

 Hilliard v. Apex Cabinet Co.,
 

 305 N.C. 593
 
 , 595,
 
 290 S.E.2d 682
 
 , 683 (1982). Therefore, "[t]he burden is on the employee to show that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment."
 
 Russell v. Lowes Prod. Distribution,
 

 108 N.C. App. 762
 
 , 765,
 
 425 S.E.2d 454
 
 , 457 (1993). As recognized by our Supreme Court in
 
 Medlin v. Weaver Cooke Constr., LLC,
 

 367 N.C. 414
 
 , 422,
 
 760 S.E.2d 732
 
 , 737 (2014), the first two elements announced in
 
 Hilliard
 
 may be proven in one of four ways:
 

 (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.
 

 Russell,
 

 108 N.C.App. at 765
 
 , 425 S.E.2d at 457 (citations omitted). "[A] claimant must also satisfy the third element, as articulated in
 
 Hilliard,
 
 by proving that his inability to obtain equally well-paying work is because of his work-related injury."
 
 Medlin,
 

 367 N.C. at 422
 
 ,
 
 760 S.E.2d at 737
 
 .
 

 The Commission found the following facts as to whether Anders had satisfied any of
 
 Russell
 
 's prongs:
 

 35. Except for the short period of time following his surgeries, Plaintiff has failed to produce evidence that he was unable to work due to his injuries, that he conducted a reasonable job search, or that it would have been futile for him to look for work, after November 28, 2010. While Plaintiff returned to work at Waffle House, earning a lower hourly rate than that earned with Defendant-Employer, Plaintiff has failed to
 
 *109
 
 produce competent evidence that he earned less than his average weekly wage at any point during his employment with Waffle House or Hardee's. Plaintiff also failed to produce evidence that any partial incapacity to work or any decrease in earnings was a result of his November 20, 2010 injuries and any subsequent physical impairments.
 

 . . .
 

 37. Plaintiff quit his job at Hardee's in October 2011 due to lack of hours. From approximately October 2011 through May 2013, Plaintiff mainly performed landscaping and construction work in the form of framing houses and was paid in cash. Plaintiff did not present evidence of his earnings from his work performed with Waffle House or Hardee's, or his jobs in landscaping and construction.
 

 38. According to his sworn discovery answers served on July 21, 2014, since the date of his injury, Plaintiff sought work at Coca-Cola, Lowe's, Smithfield Genetics, and Georgia Pacific. Plaintiff indicated he also sought work through the Employment Security Commission but did not provide any further details as to the number or types of positions for which he applied.
 

 39. At the evidentiary hearing held on September 10, 2014, Plaintiff presented a one-page job search log detailing contact with various employers from August 2014 through September 2014. Given the manner in which it was completed and Plaintiff's failure to explain the unusual format, it is likely that Plaintiff constructed this sheet at one time rather than over the period of one month as alleged. The timing of this job search documentation is suspect since the calendar for setting the hearing in this matter would have been sent out the first of August, 2014. Plaintiff testified, and there is no evidence to the contrary, that he is physically able to perform all the positions to which he applied.
 

 40. Plaintiff has not conducted a reasonable job search. The records do not reflect the types of positions for which Plaintiff applied and whether he met any necessary qualifications for the positions. Furthermore, the evidence reveals Plaintiff contacted approximately 12 employers total over a three-year period in an effort to obtain suitable employment.
 

 These unchallenged findings support the Commission's conclusion that Anders failed to meet his burden of establishing that he was "disabled as defined by the [Workers' Compensation] Act, except for [the] period from March 22, 2011 through April 7, 2011[,]" during which time defendants
 
 did pay
 
 indemnity benefits.
 

 2.
 

 Indemnity Compensation Pursuant to
 
 N.C. Gen. Stat. § 97-31
 
 (24)
 

 As to Anders' right to indemnity compensation pursuant to section 97-31(24), the Commission found:
 

 28. ... Dr. Williams testified he treated Plaintiff for nerve-type pain in his right groin and Plaintiff got better. Further, Dr. Williams could not provide the opinion that Plaintiff suffered an injury to a nerve.
 

 . . .
 

 30. Dr. Ketoff indicated there was no permanent damage to the muscles making up Plaintiffs abdominal muscular floor or to Plaintiff's spermatic blood vessels or cord. Dr. Ketoff opined that the right-sided numbness Plaintiff is experiencing is from the inguinal nerve and is probably permanent. As to the left side, Dr. Ketoff could not provide an opinion on whether Plaintiff would have permanent numbness. Dr. Ketoff did not provide evidence or testimony of the importance of the inguinal nerve to the body's general health and well-being.
 

 These unchallenged findings support the Commission's conclusions that Anders "failed to establish through competent medical evidence that he suffered loss or permanent damage to any important organs or body parts[,] and that it would be "[im]proper to issue an award under
 
 N.C. Gen. Stat. § 97-31
 
 (24)."
 

 3.
 

 Application
 

 We are mindful that the Commission's causation analysis, which is discussed in more detail below, was a component of its decision to deny Anders' claim for additional indemnity compensation. However, as demonstrated in Section III. C. 1. above, Anders failed to
 
 *110
 
 produce evidence of how his earning capacity following his termination was impaired in any way. Without establishing wage loss in the first instance, there was no way for Anders to prove that
 
 any
 
 wage loss was connected to the work-related, compensable injury.
 
 See Medlin v. Weaver Cooke Const., LLC,
 

 229 N.C. App. 393
 
 , 396,
 
 748 S.E.2d 343
 
 , 346 (2013) ("The purpose of the four-pronged
 
 Russell
 
 test is to provide channels through which an injured employee may demonstrate the required `link between wage loss and the work-related injury.'") (citing
 
 Fletcher v. Dana Corp.,
 

 119 N.C. App. 491
 
 , 494-99,
 
 459 S.E.2d 31
 
 , 34-36 (1995)),
 
 aff'd,
 

 367 N.C. 414
 
 ,
 
 760 S.E.2d 732
 
 (2014). Because this required link was not established, Anders failed to prove that he was partially or totally disabled during the periods for which he seeks compensation. Furthermore, Anders failed to establish that he suffered permanent loss or injury to an important organ or body part. Accordingly, based on the analysis above, and the crucial fact that Anders does not challenge the Commission's findings or conclusions concerning the periods of disability he allegedly suffered as a result of the work-related accident, the Commission's ultimate conclusion that Anders was not "entitled to any additional indemnity compensation under
 
 N.C. Gen. Stat. §§ 97-29
 
 , 30, or 31" remains undisturbed.
 

 D.
 
 The Commission's Causation Analysis and the
 

 Parsons
 

 Presumption
 

 On appeal, Anders' primary arguments are that the facts of
 
 Bondurant v. Estes Express Lines, Inc.,
 

 167 N.C. App. 259
 
 ,
 
 606 S.E.2d 345
 
 (2004)
 
 [3]
 
 are distinguishable from this case, and that the Commission erred in relying on
 
 Bondurant
 
 to support its conclusion that Anders' subsequent bilateral hernias were not compensable because they were not the direct and natural result of the earlier, compensable hernia that he sustained while employed by Universal Leaf. Anders supplements these arguments with his assertion that the Commission erroneously placed on him the burden of proving that his subsequent recurrent hernias were causally related to his compensable 20 November 2010 injury. According to Anders, the Commission failed to give him the benefit of the evidentiary presumption enunciated in
 
 Parsons v. Pantry, Inc.,
 

 126 N.C. App. 540
 
 ,
 
 485 S.E.2d 867
 
 (1997).
 

 The Commission found that Dr. Vire "determined that Plaintiff's bilateral hernias caused by the November 22, 2010 [compensable] injury would have been fully healed by May 18, 2013[,]" and that "Dr. Ketoff agreed that the medical records from Dr. Vire and Dr. Williams indicated that Plaintiff has recovered from his March 22, 2011 hernia repairs." Based on these and other findings, and applying "the reasoning in
 
 Bondurant
 
 " and "the statutory test enumerated in [section] 97-2(18)[,]" the Commission concluded that because "[t]he competent, credible evidence establishes that Plaintiff had fully healed from his initial hernia surgery with Dr. Vire [on] March 22, 2011 when he subsequently sustained acute injuries to his bilateral
 
 *111
 
 groin in 2013 and 2014," Anders' recurrent hernias were not compensable.
 

 It is well established that an employee who seeks workers' compensation benefits must prove that a causal relationship exists between the injury suffered and the work-related accident.
 
 Hedges v. Wake Cty. Pub. Sch. Sys.,
 

 206 N.C. App. 732
 
 , 734,
 
 699 S.E.2d 124
 
 , 126 (2010),
 
 disc. review denied,
 

 365 N.C. 77
 
 ,
 
 705 S.E.2d 746
 
 (2011). But in
 
 Parsons,
 
 this Court held that where the Commission has determined that an employee has suffered a compensable injury, a rebuttable presumption arises that additional medical treatment is causally related to the original injury.
 
 126 N.C.App. at 542
 
 ,
 
 485 S.E.2d at 869
 
 . In this context, the burden of proof is shifted from the employee to the employer "to prove the original finding of compensable injury is unrelated to [the employee's] present discomfort."
 

 Id.
 

 If the employer, however, "rebuts the
 
 Parsons
 
 presumption, the burden of proof shifts back to the [the employee]."
 
 Miller v. Mission Hosp., Inc.,
 

 234 N.C. App. 514
 
 , 519,
 
 760 S.E.2d 31
 
 , 35 (2014) (citation omitted).
 

 In the present case, Anders sought additional medical treatment for recurring hernias allegedly caused by his 2010 work-related injury. By filing a Form 60, defendants admitted the compensability of the 2010 injury.
 
 See Perez v. Am. Airlines/AMR Corp.,
 

 174 N.C. App. 128
 
 , 136,
 
 620 S.E.2d 288
 
 , 293 (2005) (holding that the
 
 Parsons
 
 presumption applies when an employer has admitted compensability of the original injury by filing a Form 60). As a result, the burden had shifted to defendants on the issue of whether Anders was entitled to additional compensation. Deputy Commissioner Stephenson correctly applied the
 
 Parsons
 
 presumption in her Opinion and Award before concluding that defendants had "successfully rebutted Plaintiff's presumption that the recurrent hernias are related to the original compensable hernias." The Commission, however, clearly failed to give Anders the benefit of the
 
 Parsons
 
 presumption.
 

 Ordinarily, the Commission's error would require us to reverse its determination of causation and remand for a new hearing on that issue.
 
 See, e.g., King v. Kelly Springfield Tire Co.,
 

 159 N.C. App. 466
 
 ,
 
 583 S.E.2d 426
 
 (2003) (remanding for new findings where the Commission failed to place the burden on the defendant to prove that the additional medical treatment sought by the plaintiff was not related to his original compensable injury);
 
 Reinninger v. Prestige Fabricators, Inc.,
 

 136 N.C. App. 255
 
 , 260,
 
 523 S.E.2d 720
 
 , 724 (1999) ("[T]he Commission[`s findings indicate that it] failed to give Plaintiff the benefit of the [
 
 Parsons
 
 ] presumption that his medical treatment now sought was causally related to his 1995 compensable injury.... Because Plaintiff was entitled to such a presumption, we remand this case to the Commission for a new determination of causation."). But that is not necessary in this case because Anders' claim for medical compensation is barred by the provisions of section 97-25.1, and the Commission's conclusion that Anders is not entitled to any additional indemnity compensation due to his failure to prove that he suffered any period of "disability" following his termination from employment with Universal Leaf remains undisturbed. Accordingly, Anders' claims for medical and indemnity compensation are barred for reasons independent of the causation issue.
 

 IV. Conclusion
 

 Anders' claim for additional medical compensation is barred by the provisions of
 
 N.C. Gen. Stat. § 97-25.1
 
 . In addition, because Universal Leaf met its initial burden of showing that Anders' termination satisfied the
 
 Seagraves
 
 test, the burden shifted to Anders to prove that he was incapable of earning his pre-injury wages in the same employment or any other employment
 
 and
 
 that the inability to earn such wages was linked to his November 2010, work-related injury.
 
 Hilliard,
 

 305 N.C. at 595
 
 ,
 
 290 S.E.2d at 683
 
 . Because Anders failed to produce evidence establishing that his pre-injury earning capacity was affected, it is inconsequential whether his subsequent recurring hernias were caused by the original compensable hernia. Although the Commission failed to give Anders the benefit of the
 
 Parsons
 
 presumption, a reversal on that issue would not change the out-come for Anders, so we need not reach this issue or remand for a new causation determination.
 

 *112
 
 As a result, the Commission's Opinion and Award is affirmed.
 

 AFFIRMED.
 

 Judges ELMORE and DILLON concur.
 

 Although the Form 28 indicated that Anders returned to work for Universal Leaf on 15 April 2011, it is clear that Anders returned to work at Waffle House, as Anders was terminated from his employment with Universal Leaf in November 2010.
 

 If an employee is either partially or totally disabled and also has a specific physical impairment that falls under
 
 N.C. Gen. Stat. § 97-31
 
 , the employee may pursue benefits under the statutory section which affords the most favorable remedy.
 
 Whitley v. Columbia Lumber Mfg. Co.,
 
 , 90, , 340 (1986).
 

 In
 
 Bondurant,
 
 the plaintiff suffered three compensable hernias, two of which were surgically repaired.
 
 167 N.C.App. at 261
 
 ,
 
 606 S.E.2d at 346-47
 
 . The plaintiff later suffered three additional hernias while he was no longer in the employ of the defendant.
 
 Id.
 
 at 261-62,
 
 606 S.E.2d at 347
 
 . On appeal to this Court, the plaintiff challenged the Commission's conclusion that his three subsequent hernias were not compensable because they were not causally related to the prior compensable hernias and were therefore governed by the statutory test for the compensability of hernias.
 
 Id.
 
 at 265,
 
 606 S.E.2d at 349
 
 ;
 
 see
 

 N.C. Gen. Stat. § 97-2
 
 (18) (requiring,
 
 inter alia,
 
 that a hernia be the immediate and direct result of a work-related accident or specific traumatic incident of work assigned by the defendant-employer). This Court rejected the plaintiff's argument that the Commission erred by applying the test set out in section 97-2(18) instead of applying the rule recognized in
 
 Heatherly v. Montgomery Components, Inc.,
 
 , 379, , 30 (1984) ("When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct.") (citation omitted), reasoning that "even if [we] ... were to conclude that
 
 Heatherly
 
 controls, plaintiff's argument nevertheless fails as [expert medical testimony established] that just because a person has undergone a hernia repair, it does not necessarily follow that the person will have another hernia."
 
 Bondurant,
 

 167 N.C.App. at 266
 
 ,
 
 606 S.E.2d at 350
 
 .